IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| Ellis Louis Mashburn, Jr., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-1829-LSC |
| | ) | |
| Kim Thomas, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF OPINION

I.    Introduction

On September 16, 2014, Petitioner Ellis Louis Mashburn, Jr. ("Mashburn"),

through counsel, filed the instant petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging his 2006 capital murder conviction and sentence of death

in the Circuit Court of Calhoun County, Alabama.

On December 1, 2014, the day on which the Respondent had been ordered to

file its answer to the petition as well as the state court record, the Respondent filed a

motion to dismiss Mashburn's petition as barred by the one-year limitations period set

forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

U.S.C. § 2244(d)(1), as well as a request to extend the answer and state court record

filing deadlines until such time as the Court rules on the motion to dismiss.  (Docs. 5

and 6.)

After initial review of the Respondent's motion to dismiss, the Court granted the request for an extension of the other deadlines and ordered Mashburn to show cause why the motion to dismiss should not be granted.  Mashburn has responded to the show cause order (doc. 8), and the Respondent has filed a reply in support of its motion (doc. 9).

For the following reasons, the Courts finds that Mashburn's habeas petition is due to be dismissed as filed outside of the AEDPA's one-year statute of limitations.

II.    Procedural History

On October 29, 2002, Mashburn and an accomplice robbed and murdered his grandmother and step-grandfather, Henry and Clara Eva ("Eva") Birmingham, at their home.  The autopsy revealed that they died as a result of multiple blunt and sharp force injuries.  Blood that matched Mashburn's blood type was located in the victims' house.  Law enforcement officers later retrieved various pieces of Eva Birmingham's jewelry from Mashburn's residence.

Mashburn was indicted for five counts of capital murder—two counts because he had committed the murders during the course of a robbery, two counts because he had committed the murders during the course of a burglary, and one count because

he committed the murders by one act or pursuant to one scheme or course of conduct. On September 13, 2006, Mashburn pleaded guilty before a jury to all five counts of capital murder, stating that he was doing so because he was in fact guilty. The matter was presented to a jury so the jury could determine whether the State had proven its case against Mashburn beyond a reasonable doubt, as required by Alabama Code section 13A-5-42. After hearing all the evidence, the jury convicted Mashburn on each count.

At the penalty phase, the trial court found the existence of four aggravating circumstances: (1) that the murders were committed during the course of a burglary; (2) that the murders were committed during the course of a robbery; (3) that the murders were especially heinous, atrocious, or cruel when compared to other capital offenses; and (4) that Mashburn caused the death of two or more persons pursuant to one scheme or course of conduct. The jury voted 11-1 in favor of recommending the death penalty. The trial court followed the jury's recommendation and sentenced Mashburn to death.

Mashburn's conviction and sentence were affirmed by the Alabama Court of Criminal Appeals and certiorari review was denied by the Alabama Supreme Court. *Mashburn v. State*, 7 So. 3d 453 (Ala. Crim. App. 2007), cert. denied October 24,

2008.  The United States Supreme Court denied Mashburn's petition for certiorari review on June 1, 2009.  *Mashburn v. Alabama*, 556 U.S. 1270 (2009).

On October 21, 2009, Mashburn, through the same counsel that represents him in this proceeding, filed a petition for state post-conviction relief in the state circuit court pursuant to Rule 32 of the Alabama Rules of Criminal Procedure.  On February 8, 2010, the State filed its answer and a motion to dismiss all claims in Mashburn's petition.[1]  On March 2, 2010, Mashburn filed a motion in which he made various discovery requests of the State. On March 3, 2010, counsel for the parties participated in a teleconference with the circuit court for the purpose of initially reviewing the case.  During the teleconference, counsel for the State requested that the court allow it to respond to Mashburn's discovery requests.  The court informed the parties that it would not rule on the State's motion to dismiss until it had ruled on Mashburn's discovery motion.  The court also stated that it would set a briefing schedule for the State's motion to dismiss and would allow Mashburn to respond to it before ruling on it.  The State filed its opposition to Mashburn's motion for discovery on March 11, 2010.  Mashburn filed a reply brief in support of his motion for discovery on March 18, 2010.  On March 30, 2010, the State sent a proposed order to the court that would

---

[1] The State was also represented by the same counsel that currently represents the Respondent in this proceeding.

dismiss Mashburn's petition for the reasons stated in its motion to dismiss.  On April 1, 2010, the court signed and entered that order, dismissing Mashburn's Rule 32 petition in its entirety.  At that time the court had not yet ruled on Mashburn's discovery request or set a briefing schedule on the State's motion to dismiss.  The court's April 1, 2010, dismissal order indicates that a copy of the order was served on counsel for Mashburn.  However, neither counsel for Mashburn nor counsel for the State was served with a copy of the dismissal order.  Not surprisingly, then, Mashburn did not file a notice of appeal of that dismissal order within the 42-day period provided under Alabama law.  *See* Rule 26(a), Ala. R. App. P.

It was not until August 23, 2011, sixteen months later, that counsel for the State notified Mashburn's counsel that he had recently obtained a copy of the April 1, 2010, signed dismissal order by inquiring with the court about the status of the post-conviction proceedings.  At that time, counsel for the State told Mashburn's counsel that the State had not been served with a copy of the order.  Counsel for Mashburn stated that he had not been served either.  Counsel for the State then informed Mashburn's counsel that the State would not oppose Mashburn filing a new petition seeking an out-of-time appeal under Rule 32.1(f), Ala. R. Crim. P.  Under Alabama law, the proper way to seek an out-of-time appeal from the denial of a Rule 32 petition

when the failure to timely appeal was due to no fault of the petitioner is by filing another Rule 32 petition in the circuit court.  *See* Ala. R. Crim. P. 32.1(f).  Petitioners have six months from discovery of the dismissal or denial to file the Rule 32.1(f) petition seeking an out-of-time appeal.  *See* Ala. R. Crim. P. 32.2(c).

On September 8, 2011, sixteen days after learning of the court's dismissal of the Rule 32 motion, Mashburn filed a pleading in his original Rule 32 action styled as "Motion Pursuant to Alabama Rule of Criminal Procedure 32.1(f) to Set Aside or Vacate the Court's Order Dismissing Petitioner's Rule 32 Motion."  He attached to this motion his original Rule 32 petition that had been filed on October 21, 2009.  This motion did not request an out-of-time appeal, but rather sought to vacate the court's dismissal order.  In open court on October 12, 2011, Mashburn filed a new petition styled "Amended Petition for Relief from Judgment Pursuant to Rule 32.1(f)." Among other things, this petition sought, under Rule 32.1(f), an out-of-time appeal from the circuit court's dismissal of his original Rule 32 petition, in the event that the court did not grant Mashburn's motion to set aside or vacate the April 1, 2010 order. That same day, the circuit court held a hearing on the petition.  The circuit court dismissed successive claims raised in the new petition, but granted Mashburn's petition for an out-of-time appeal.  The court expressly found that the delay was due

to no fault of Mashburn's or his counsel's, writing, "It appears that neither party received notice of this Court's order summarily dismissing that petition for post-conviction relief.  No appeal was filed on that petition.  The failure to appeal was not the fault of the Petitioner or his counsel."

On November 18, 2011, Mashburn filed his notice of appeal in the Alabama Court of Criminal Appeals.  The appellate court affirmed the circuit court's summary dismissal of Mashburn's original Rule 32 petition on July 12, 2013.  *Mashburn v. State*, 2013 WL 3589300, at *3 (Ala. Crim. App. July 12, 2013).  On February 21, 2014, the Alabama Supreme Court denied certioari review.

On September 26, 2014, Mashburn filed the instant petition for writ of habeas corpus in this Court, which is his first and only federal habeas petition.

III.   Discussion

   A.   Statutory tolling of the AEDPA's one-year statute of limitations during the pendency of Mashburn's state post-conviction proceedings

The AEDPA establishes a one–year time limitation for a state prisoner to file a federal habeas corpus petition.  28 U.S.C. § 2244(d)(1).  "This rule 'serves the well-recognized interest in the finality of state court judgments' and 'reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas

petitioner has in which to seek federal habeas review.'" *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1283 (11th Cir. 2002) (quoting *Duncan v. Walker*, 533 U.S. 167, 179 (2001)).  The one-year period runs from the latest of four specified dates. 28 U.S.C. § 2244(d)(1).  This case involves the date provided by § 2244(d)(1)(A), which is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

The 365-day filing period for Mashburn's federal habeas petition began to run on June 1, 2009, the date on which the United States Supreme Court denied his petition for writ of certiorari on direct review.  The clock ran for 142 days until Mashburn filed his Rule 32 petition on October 21, 2009.  Thus, Mashburn's Rule 32 petition was filed with 223 days remaining in the § 2244(d)(1) limitations period.  The AEDPA limitations period was statutorily tolled during the time in which Mashburn's Rule 32 petition was pending.  *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.").

However, the Respondent contends, and the Court agrees, that because the circuit court dismissed Mashburn's petition on April 1, 2010, and Mashburn did not

file a timely notice of appeal from that dismissal, the AEDPA clock resumed running on May 13, 2010, which was the last day on which Mashburn could have filed a notice of appeal under Rule 26(a), Ala. R. App. P. *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006) (a post-conviction application remains pending until the time to seek appellate review expires if a petitioner does not file a notice of appeal). At that point, Mashburn had 223 days left in which to file his § 2254 petition. *See Stafford v. Thompson*, 328 F.3d 1302, 1303 (11th Cir. 2003) ("The days when nothing was pending would count toward the one-year limitation period."). Mashburn's federal habeas corpus petition would have been due on December 22, 2010. Thus, the time for filing his federal habeas petition had elapsed before either party learned of the dismissal order and was long expired by the time Mashburn's subsequent Rule 32.1(f) petition seeking to file a belated appeal was filed. As Mashburn's federal habeas petition was not filed until September 2014, it was nearly four years too late.

Mashburn argues that because the state courts later granted his request to appeal the dismissal of his Rule 32 petition out-of-time, his Rule 32 petition remained "pending"—and thus statutorily tolled the one-year statute of limitations for purposes of § 2244(d)(2)—from the time he filed it on October 21, 2009, during the

16-month interval of time between May 13, 2010 (the date that the period expired to appeal the April 1, 2010 dismissal order) and September 8, 2011 (the date Mashburn filed his petition for belated appeal), and that it continued to be pending through the state courts' consideration of his belated appeal up until the date that the Alabama Supreme Court denied certiorari review on February 21, 2014.  According to Mashburn, then, when the Alabama Supreme Court denied review of his Rule 32 petition on February 21, 2014, he still had 223 days left in which to file his federal habeas petition, and his filing of the petition on September 26, 2014, with six days remaining on the clock, was thus timely.

However, Eleventh Circuit precedent, which firmly establishes that the statutory tolling period does not encompass a period of time in which a state petitioner does not have a properly-filed post-conviction petition actually pending in state court, forecloses Mashburn's argument.  The controlling case is *Moore v. Crosby*, 321 F.3d 1377 (11th Cir. 2003).  In *Moore*, the petitioner filed a state post-conviction motion on September 8, 1997, after 268 days had elapsed from the date on which his judgment of conviction became final.  *Id.* at 1379 n.1.  The Florida state post-conviction court denied the motion on September 15, 1998.  *Id.*  As Mashburn failed to do here, the petitioner did not timely appeal the court's denial of his post-conviction motion.  *Id.*

Then, a period of 199 days elapsed from the expiration of the time for appeal (October 15, 1998) until the petitioner filed his first state petition seeking a belated post-conviction appeal (May 11, 1999).  *Id.*  As of May 11, 1999, 467 days had already elapsed, not counting the period of tolled time in which his post-conviction petition was pending.[2]  *Id.*  In other words, as in this case, the AEDPA limitations period expired before the petitioner ever filed his request for a belated post-conviction appeal.  The state court denied the petition seeking a belated post-conviction appeal on September 9, 1999.  *Id.* at 1378.  The petitioner then filed his federal habeas petition on February 11, 2000, which the district court dismissed as untimely on March 13, 2000.  *Id.*  The petitioner then sought leave to file a successive federal habeas petition, which was denied by the district court on October 25, 2000.  *Id.*  On December 4, 2000, the petitioner filed a second state petition seeking permission to file a belated appeal of the 1998 state court denial of post-conviction relief.  *Id.*  On December 29, 2000, the petitioner filed a Rule 60(b) motion in his federal habeas corpus proceeding, arguing that his second request for a belated appeal ought to toll the AEDPA limitations period such that his federal petition was not untimely, pointing out that he had requested collateral counsel to file an appeal at the conclusion of the state court's

---

[2] The court stated that 367 days had elapsed at this point, but this appears to be a scrivener's error.

denial of his post-conviction petition but counsel had not done so. *Id.* The federal

district court denied the Rule 60(b) motion on January 12, 2001. *Id.* At that time, the

petitioner's request for permission to file a belated appeal in state court was still

pending. *Id.* The state court eventually granted that request on March 22, 2001. *Id.*

The Eleventh Circuit affirmed the district court's denial of the Rule 60(b)

motion in the petitioner's federal habeas case, holding that the petitioner's filing of

an out-of-time appeal of the denial of the state post-conviction motion after the federal

limitations period had already expired did not revive the time during which no state

collateral petition was pending before the state court and thus did not toll the AEDPA

limitations period, explaining:

> It is clear that tolling continues under section 2244(d)(2) while the
> petitioner appeals the denial of a state application in state court. *Carey
> v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (holding
> that a petitioner's claim is "pending" for the entire term of state court
> review, including those intervals between one state court's judgment and
> the filing of an appeal with a higher state court); *see also Nyland v. Moore*,
> 216 F.3d 1264, 1267 (11th Cir.2000) (noting that the statute of limitations
> was tolled until the mandate issued from the state court of appeals' order
> denying a rehearing on its affirmance of the state trial court's denial of
> a motion for post-conviction relief).
>
> The question remains, however, what effect the granting of a
> motion for belated appeal from the denial of a timely state application
> would have on calculating how long that state application was pending
> under section 2244(d)(2). The few circuits to discuss the issue have
> found that an out-of-time appeal does not revive the time during which

no state collateral petition was pending before the state court. *See Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir.2001) (holding that after the appeal period has lapsed, an application for further appellate review ceases to be "pending" for purposes of calculating federal habeas corpus tolling provision); *Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir.2000) (concluding that a "state court's grant of leave to appeal out of time cannot erase the time period during which nothing was pending before a state court"); *Fernandez v. Sternes*, 227 F.3d 977, 981 (7th Cir.2000) (holding that while a state process may be reviewed after the time to seek further review has expired, "the prospect of revival does not make a case 'pending' in the interim").

After reviewing these cases, we are particularly persuaded by the Fifth Circuit's analysis in *Melancon* and adopt its reasoning. The Fifth Circuit, in discussing whether the petitioner's federal petition was timely, found that, at the point when the state limitations period expired, the petitioner was not entitled to further appellate review and, therefore, he had no application "pending" in state court. The court also explained that a state court's subsequent decision to permit review may toll the time relating to the application, but it does not change the fact that the application was not pending prior to the filing of the application. Thus, the Fifth Circuit concluded that after the appeal period lapsed, an application ceased to be pending, but that a subsequent properly filed application entitled the petitioner to additional tolling beginning at the time of the proper filing. This finding, the court reasoned, was consistent with Congress's intent to encourage exhaustion of state remedies without permitting petitioners to indefinitely toll the limitations period.

We agree with the Fifth Circuit that a difference exists between giving a petitioner credit for time needed to exhaust his state remedies prior to filing a federal habeas petition and "retroactively" tolling periods in which the petitioner is not attempting to exhaust state remedies. Such an interpretation would permit a petitioner to avoid the preclusive effect of a time-bar ruling by allowing a belated appeal beyond the one-year statute of limitations. This would be contrary to the purposes of the AEDPA.

>        In conclusion, we hold that the petitioner's belated appeal motion
> was not pending during the limitations period. The statutory tolling
> provision does not encompass a period of time in which a state prisoner
> does not have a "properly filed" post-conviction application actually
> pending in state court. A state application filed after expiration of the
> limitations period does not relate back so as to toll idle periods preceding
> the filing of the federal petition. The plain language of the statute
> provides for tolling "[t]he time during which a properly filed application
> for State post-conviction or other collateral review . . . is pending." 28
> U.S.C. § 2244(d)(2). While a "properly filed" application for
> post-conviction relief tolls the statute of limitations, it does not reset or
> restart the statute of limitations once the limitations period has expired.
> In other words, the tolling provision does not operate to revive the
> one-year limitations period if such period has expired. For the foregoing
> reasons, we affirm the district court's judgment of dismissal.

*Id.* at 1380-81.

The same is true for Mashburn's case as was true in *Moore*: at the point when

Mashburn's AEDPA limitations period expired (December 22, 2010) Mashburn "was

not entitled to further appellate review [of his Rule 32 petition, because he had not

timely appealed its dismissal], and thus he had no application 'pending' in state

court." *Id.* at 1380. Simply put, there was nothing for the state court to consider until

Mashburn filed his request for a belated appeal on September 8, 2011, and thus there

was nothing "pending" before the state court in the interim 223-day period between

the last day Mashburn had to appeal the Rule 32 court's denial of his petition (May

13, 2010) and the expiration of the one-year statute of limitations on December 22,

2010.  The state court's act of later granting Mashburn's request for a belated appeal would have restarted the tolling relating to the Rule 32 petition, starting from the time of the properly-filed request for a belated appeal (if the AEDPA clock had not already run out months earlier), but it did not change the fact that the Rule 32 petition was not pending prior to the filing of the request for the belated appeal, when the AEDPA limitations period ran out.

In a similar case, *McMillan v. Secretary for Department of Corrections,* 257 F. App'x 249 (11th Cir. 2007), the Eleventh Circuit reiterated the rule in *Moore,* stating: " [w]e reject the argument that a state post-conviction motion remains 'pending' after the standard time to file an appeal expires merely because a state provides a procedure for seeking an out of time appeal in special circumstances or because a state court ultimately grants a petition for an out-of-time appeal." *Id.* at 250.[3]  In *McMillan,* the petitioner's conviction became final on April 18, 2000, and he filed his Florida state post-conviction motion 248 days later, on December 22, 2000.  *Id.*  That motion was denied on February 13, 2002, but the petitioner did not appeal that denial within the 30-day period because his retained counsel never notified him of the dismissal.  *Id.*  He

---

[3] Because of this rule, Mashburn's insistence that he complied with Alabama procedural law by filing his request for a belated appeal well within the six-month window of time provided for in Ala. R. Crim. P. 32.2(c) is beside the point.

discovered the dismissal on or about April 15, 2002, and he filed a *pro se* petition for a belated appeal over 60 days later on June 18, 2002.  *Id.*  From March 15, 2002 (the last day he had to appeal the court's dismissal of his petition) to June 18, 2002, another 95 days passed, which, added to the AEDPA clock, made the total time 343 days.  *Id.*  The state courts granted the petitioner's request for a belated appeal, and the post-conviction motion proceeded through the appeals process until the appellate court issued the mandate affirming the dismissal on January 16, 2004.  *Id.*  at 251.  Another 39 days ran between January 16, 2004, and February 24, 2004, when the petitioner filed his § 2254 petition in federal court.  *Id.*  At this point 382 days had passed, accounting for all of the appropriate tolling the petitioner was due, and thus the district court dismissed the habeas petition as untimely.  *Id.*  The Eleventh Circuit affirmed the district court's ruling that the post-conviction motion was not "pending" for the 95 days between March 15, 2002 (the date that the 30-day period expired to appeal the February 13, 2002 order) and June 18, 2002 (the date the petitioner filed his first petition for belated appeal), explaining:

> The Supreme Court recently clarified that "[t]he time that an application for state post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 849, 163 L.Ed.2d 684 (2006) (citing *Carey v.*

*Saffold*, 536 U.S. 214, 219–20, 122 S.Ct. 2134, 2138, 153 L.Ed.2d 260 (2002)). This Court has further held that an application remains pending until the time to seek appellate review expires if a petitioner does not file a notice of appeal. *Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir.2006).

While McMillan's Rule 3.850 proceedings were pending until the 30–day period to file a timely appeal expired on March 15, 2002, *see id.* at 1383, McMillan did not have anything filed in state court for the next 95 days until he filed his petition for belated appeal on June 18, 2002. Regardless of the state court's later actions granting McMillan's petition for belated appeal and stating its order should be filed as a new notice of appeal, there was nothing filed in state court during this 95–day period. Thus, there was nothing "pending" for these 95 days under § 2244(d)(2).

*Id.* at 252.[4]

The cases Mashburn offers do not call this Eleventh Circuit precedent into question because they either contain materially different facts or do not discuss statutory tolling under § 2244(d), or both. For example, Mashburn cites the Supreme Court's decision in *Jimenez v. Quarterman*, 555 U.S. 113 (2009), for the proposition that the "federal statute of limitations does not run until state proceedings are

---

[4]   The difference between *McMillan* and *Moore* is that in *Moore,* as in Mashburn's case, the state petition for a belated appeal was filed well after the AEDPA limitations period had already expired, while in *McMillan*, the petition for a belated appeal was filed within the one-year limitations period and thus could re-start the statutory tolling period for as long as that state proceeding remained pending.  McMillan's federal habeas petition was still untimely, though, even taking into account both periods of time in which the one-year period was statutorily-tolled. Both cases apply the same rule, however, which is that the state post-conviction proceeding is no longer "pending" for purposes of statutory tolling once the standard time to file an appeal expires with no appeal filed.

complete, even when it involves large gaps of time when a petitioner is not pending in court" (doc. 8 at 7), but in that case the Court was not addressing the statutory tolling provisions of § 2244(d)(2), but was rather determining when the § 2244(d) limitations period *begins to run.* In *Jimenez,* after the petitioner's conviction for burglary became final on October 11, 1996, the state appellate court held in post-conviction proceedings that the petitioner had been denied his right to direct appeal and granted him the right to file an out-of-time direct appeal.  555 U.S. at 116.  The petitioner filed the direct appeal, his conviction was affirmed, he filed a second state post-conviction application which was denied, and he then filed his first federal habeas petition.  *Id.*  The state argued that the petitioner's habeas petition was untimely because the statute began to run on October 11, 1996, when the petitioner's conviction first became final.  As recounted by the Court:

> To establish the timeliness of his petition, [the petitioner] relied on 28 U.S.C. § 2244(d)(1)(A), which provides " the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" as the trigger for AEDPA's 1–year limitations period. Petitioner argued that his judgment thus became final on January 6, 2004, when time expired for seeking certiorari review of the decision in his out-of-time appeal. Until that date, petitioner argued, direct review of his state-court conviction was not complete.

*Id.* at 116-17 (footnote omitted).   The Court ultimately interpreted section

2244(d)(1)(A) as follows:

> Our decision today is a narrow one. We hold that, where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet "final" for purposes of § 2244(d)(1)(A). In such a case, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal. Because the Court of Appeals denied a certificate of appealability based on a contrary reading of the statute, we reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Id.* at 121.

By its words, the *Jimenez* decision implicates only those cases in which there is an out-of-time direct appeal filed as a part of the post-conviction review process in the determination of when direct review ends and when section 2244(d)'s statute begins to run.  The Court does not agree with Mashburn that this narrow holding should be expanded to mean that an out-of-time appeal of a post-conviction motion "retroactively" tolls periods of time in which the petitioner is not attempting to exhaust state remedies.  Indeed, shortly after *Jimenez* was handed down, the Eleventh Circuit noted in dicta in *Hollingsworth v. Secretary, Department of Corrections,* 334 F. App'x 302 (11th Cir. 2009), that because the petitioner's "belated [post-conviction] appeal was not a direct appeal of his conviction, *Jimenez* does not affect the

calculation of [the petitioner's] AEDPA clock." *Id.* at 305 n.4.  In *Hollingsworth*, as in the cases discussed above, the petitioner failed to timely appeal the state court's denial of his post-conviction motion because he was not apprised of the dismissal in time, and by the time he filed his request for a belated appeal, the one-year AEDPA clock had already run.  The *Hollingsworth* court relied on *Moore* to hold that the petitioner's belated appeal did not "relate back so as to toll idle periods preceding the filing of the federal [habeas] petition." *Id.* at 305 (quoting *Moore*, 321 F.3d at 1381).

Mashburn also argues that the case of *Loggins v. Thomas*, 654 F.3d 1204 (11th Cir. 2011), and its underlying state cases, is indistinguishable to his but that no federal court found Loggins's petition to be untimely.  However, in *Loggins*, the State never argued that Loggins's federal petition was untimely, and there was no *sua sponte* discussion from the Eleventh Circuit of how that cases's complicated procedural history would affect the calculation of time for the purposes of § 2244(d)(1).  The Supreme Court has held that a federal court may in its discretion consider the timeliness of a state prisoner's habeas petition *sua sponte,* but it is not obligated to. *Day v. McDonough*, 547 U.S. 198, 209-10 (2006).  This Court will not heed Mashburn's suggestion to take the Eleventh Circuit's silence on the timeliness of Loggins's petition as any kind of affirmative statement relevant to Mashburn's case.

In sum, Mashburn's Rule 32 proceedings stopped tolling the AEDPA limitations period when they ceased to be pending, which occurred on March 15, 2010, or the last day on which Mashburn could have appealed the circuit court's dismissal order.   During the following 223 days in which nothing was pending, the AEDPA clock ran out, and the fact that Mashburn subsequently requested, and was granted, a belated appeal does not operate to retroactively statutorily toll those days. *See Moore,* 321 F. 3d at 1380-81.  Mashburn's § 2254 petition, which was filed nearly four years later, is thus due to be dismissed as untimely, unless he can establish that equitable tolling or some other exception applies.

### B.     Equitable tolling of the time period in which Mashburn was unaware of the court's dismissal of his Rule 32 petition

Mashburn argues in the alternative that he is entitled to equitable tolling of the AEDPA clock from April 1, 2010, the date on which the circuit court dismissed his Rule 32 petition, to the time that Mashburn sought an out-of-time appeal.  However, as an initial matter, it is not clear that Mashburn is entitled to equitable tolling on these facts.  Additionally, even assuming that he is entitled to equitable tolling of the period of time up until he discovered that the court had dismissed his petition, his § 2254 motion was still filed six days too late.

"Equitable tolling is an extraordinary remedy which is typically applied

sparingly." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000).  The AEDPA's one

year statute of limitations for filing a federal habeas petition is subject to equitable

tolling only "when a movant untimely files because of extraordinary circumstances

that are both beyond his control and unavoidable even with diligence."  *Knight v.*

*Schofield*, 292 F.3d 709, 711 (11th Cir. 2002) (quoting *Sandvik v. United States*, 177

F.3d 1269, 1271 (11th Cir. 1999)).  In certain circumstances, a habeas petitioner may

be "entitled to have the time limitations of AEDPA equitably tolled until the date that

he received notice that the state court had denied relief."  *Id.*  However, this relief is

available only to petitioners who "exercised diligence in inquiring about the decision."

*Id.* at 711.  Due diligence "is assessed on a case-by-case basis, considering the specific

circumstances of the subject case."  *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150,

1158 (11th Cir. 2014).

　　　It is by no means clear that Mashburn has made the required showing of

diligence and circumstances beyond his control that would entitle him to equitable

tolling.  As stated above, the trial judge dismissed Mashburn's petition on April 1,

2010, without providing notice to Mashburn or to the State.  The Eleventh Circuit

discussed a similarly delayed order in *Drew v. Department of Corrections*:

　　　　　A lengthy delay between the issuance of a necessary order and an
　　　　inmate's receipt of it might provide a basis for equitable tolling if the

petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition. *See Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002); *see also Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001) ("[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter."); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (explaining that a delay in receiving notice of denial of appeal might render equitable tolling appropriate). Such tolling is not proper here. Even assuming that he did not receive the district court's order until February 1996, Drew has provided no evidence supporting his claim that he repeatedly attempted to ascertain the status of his case from the Clerk's office, a burden necessary to sustaining his claim of extraordinary circumstances. Indeed, far from depicting diligent efforts to learn about the case, the mail record that comprises Drew's entire evidentiary proffer actually cuts against his claim, as it reflects only one letter sent to the Clerk's office. And even that one letter was not mailed until January 30, 1996, a full sixteen months after the petition was filed and only three weeks before he received a copy of the order. We think that one letter is plainly an insufficient evidentiary foundation to support Drew's claim of diligence, let alone to establish that the trial court clearly erred in finding Drew dilatory.

297 F.3d at 1288.

As was the case in *Drew*, while the circuit court's failure to notify the parties of the dismissal was not Mashburn or his counsel's fault, the inquiry does not end there. Mashburn must also be able to show that he was diligent in attempting to ascertain the status of his case. Due to the fact that the court apparently assured the parties during the teleconference on March 30, 2010, that it would not rule on the State's motion to

dismiss until after it had ruled on Mashburn's discovery request and until after it had allowed Mashburn the opportunity to respond to the motion to dismiss, it is understandable that neither Mashburn nor his counsel inquired about the status of his case for a considerable period of time thereafter.  However, Mashburn's counsel made no inquiries for sixteen months, and thus did not learn about the circuit court's dismissal order until counsel for the State, who had made an inquiry with the court regarding the case's status, notified him.[5]  The Court is not aware of any circumstance that would have prevented Mashburn or his counsel from making the same inquiry at any point during the sixteen-month period between the entry of the circuit court's dismissal order and the date that the State's counsel contacted Mashburn's counsel. It appears counsel would not have even needed to call the court's clerk or the judge's chambers, because the docket report for the case was available for review electronically.  Indeed, the electronic "Case Action Summary" indicates that the circuit court's dismissal order was entered and available for review from April 1, 2010 at 8:50 A.M.

Mashburn's counsel's failure to inquire about his case distinguishes it from the facts in *Knight v. Schofield*, on which Mashburn attempts to rely.  As the Eleventh

---

[5] Mashburn has nowhere indicated that he or his counsel made any inquiries about the case between April 1, 2010 and August 2011.

Circuit described in that case:

> In this case, the fact that the Supreme Court of Georgia failed to notify Knight of its decision was certainly beyond Knight's control. Knight, as a *pro se* imprisoned defendant, exercised diligence in inquiring about the decision. It is understandable that Knight did not make any inquiries until February of 1998 because the Georgia Supreme Court clerk had assured him that he would be notified as soon as a decision was made. After over a year had passed, Knight, on his own initiative, contacted the clerk seeking information about the status of his case. Until the clerk responded, Knight had no way of knowing that his state remedies had been exhausted. The law is clear that he could not file a federal motion until his pending state application was denied. 28 U.S.C. § 2254(b)-(c). Therefore, he had every reason to delay such filing until he knew that state relief had been denied. Such circumstances meet the requirements of *Sandvik* so that Knight was entitled to have the time limitations of AEDPA equitably tolled until the date that he received notice that the state court had denied relief. *See Woodward v. Williams*, 263 F.3d 1135 (10th Cir.2001) (holding that lack of knowledge of state court decision may provide basis for equitable tolling when prisoner acts diligently); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.2000) (holding that when prisoner diligently seeks information about the status of his case, the limitations period may be equitably tolled until he receives notice of its denial).

> We should note that not in every case will a prisoner be entitled to equitable tolling until he receives notice. Each case turns on its own facts. In this case Knight was assured that the court would contact him, then demonstrated diligence in pursuing information when it did not do so. These facts show that Knight is entitled to equitable tolling until March 4, 1998, the day he received notice of the final denial of the Georgia Supreme Court.

292 F.3d at 711.  Unlike Knight, Mashburn and his counsel never took the initiative

to inquire about the status of the case.  Moreover, Mashburn was represented by

counsel during the entire period and had resources that were unavailable to Knight.

These facts show a lack of diligence on the part of Mashburn's counsel such to preclude the extraordinary remedy of equitable tolling.  The Court also notes that after the conclusion of the direct review process on the belated post-conviction appeal, which Mashburn's counsel knew had been delayed sixteen months, Mashburn's counsel still waited over seven more months, until September 26, 2014, to file his federal habeas corpus petition.

In any event, even assuming for the purposes of argument that Mashburn could show that he was entitled to equitable tolling, his petition is still untimely.  This is because Mashburn would only be entitled to equitable tolling up until August 23, 2011, " the date that he received notice that the state court had denied relief."  *Knight*, 292 F.3d at 711.  On that date, the AEDPA clock began running again because no state court proceeding was pending at that time.  *See* 28 U.S.C. § 2244(d)(2); *see also Moore*, 321 F. 3d at 1381 (" [AEDPA's tolling provision] does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court." ); *Stafford*, 328 F.3d 1303.  From August 23, 2011, until the filing of his next state court pleading on September 8, 2011, sixteen days elapsed.  Thus, Mashburn had 207 days remaining in which to file his habeas petition.

The clock began running again when Mashburn's Rule 32.1(f) proceeding became final with the Alabama Supreme Court's denial of certiorari review on February 21, 2014. With 207 days remaining, Mashburn's habeas corpus petition would have been due on September 16, 2014. Mashburn's petition was not filed until September 26, 2014. Thus, even under the most favorable interpretation of the facts possible, Mashburn's petition is time-barred under the provisions of 28 U.S.C. § 2244(d).[6]

Mashburn argues that since Ala. R. Crim. P. 32.2(c) gave him up to six months after learning about the dismissal order to file a request for a belated appeal, this Court should find that the AEDPA clock continued to be equitably tolled during the sixteen days in which he waited to file his out-of-time appeal request. According to

---

[6] This calculation assumes that Mashburn's filing of the motion to "set aside or vacate" the circuit court's April 1, 2010, dismissal order on September 8, 2011 was sufficient to resume statutory tolling of the AEDPA's limitations period because it constituted a "properly-filed" post-conviction motion under § 2244(d)(2). However, there is some indication that the motion filed on September 8, 2011, was not a "properly-filed" post-conviction motion under § 2244(d)(2). As noted previously, under Alabama law, the proper way to seek an out-of-time appeal from the denial of a Rule 32 petition when the failure to timely appeal was due to no fault of the petitioner is by filing a new Rule 32 petition in the circuit court, asking for the appeal. *See* Ala. R. Crim. P. 32.1(f); *see also Ex parte Bonner*, 926 So. 2d 339, 340 n.1 (Ala. 2005) ("[T]he proper method of seeking an out-of-time appeal from the denial of a Rule 32 petition is by filing another Rule 32 petition."). The September 8, 2011 motion was filed in Mashburn's original Rule 32 case, which by that time the circuit court no longer had jurisdiction over, and it did not ask for an out-of-time appeal, but rather sought vacatur of the dismissal order. As such, it was not "properly-filed" under § 2244(d)(2). Mashburn did not "properly-file" the appropriate Rule 32.1(f) petition until October 12, 2011, when he filed a new Rule 32 petition seeking the belated appeal. Calculating tolling from this date instead would mean that fifty days of his § 2244(d) limitations period ran before tolling recommenced, thus making his § 2254 petition forty-four days late.

Mashburn, then, the clock with 223 days remaining did not begin to run again until the Supreme Court denied review of the belated appeal on February 21, 2014, and his § 2254 motion was timely filed on September 26, 2014 because there were six days remaining on the clock.  Under Mashburn's logic, if he had waited until the last day of the six-month period provided for in Ala. R. Crim. P. 32.2(c) to file his belated appeal, the AEDPA clock should have remained equitably tolled for that entire six-month period.  However, Mashburn cites no authority indicating that Ala. R. Crim. P. 32.2(c)  has any effect whatsoever on the doctrine of equitable tolling, and this Court finds that it shouldn't.  The doctrine of equitable tolling provides that the clock is tolled only up until the petitioner *discovers the ruling*, no later, and its dual requirements of diligence in efforts to file a timely habeas petition and extraordinary and unavoidable circumstances preventing such a filing run counter to a finding that a petitioner could wait as long as was provided for under state law to file a belated appeal, knowing all the while that he had discovered the ruling months earlier.  Moreover, even though it may have reasonably taken Mashburn's counsel sixteen days to prepare the appropriate pleadings seeking an out-of-time appeal, Mashburn has offered no explanation as to why counsel waited seven months after the conclusion of review on the belated direct appeal—a proceeding that counsel knew had been

considerably delayed—to file the federal habeas petition.  In sum, even if equitable tolling applied in this case up until the date that Mashburn discovered the ruling, Mashburn's habeas petition was still filed too late.

### C.    Actual Innocence

In the interest of completeness, the Court notes that the Supreme Court has held that actual innocence can serve as a gateway through which a prisoner may bring his first federal post-conviction challenge despite the expiration of the relevant statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1928, 1934-36 (2013).  That holding was based on an equitable exception to the statute of limitations contained in the AEDPA.  *Id.*  However, Mashburn has not raised a claim of actual innocence as an exception that might excuse the untimeliness of his filing, either in his brief in response to the Respondent's motion to dismiss or in his habeas petition itself. Indeed, the fact that Mashburn pled guilty to all five counts of capital murder runs counter to any post-conviction claim of actual innocence of the crimes committed.  If he were to now make that claim, he would have to produce new, reliable evidence demonstrating that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Nothing in his filings amounts to such a claim.

However, the actual innocence exception has been applied not only in the context of a claim of actual innocence of the crime of conviction, but also in the context of a claim of actual innocence of the sentence imposed. *See Sibley v. Culliver*, 377 F.3d 1196, 1205-06 (11th Cir. 2004) (citing *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)). " To show actual innocence of a capital sentence, a movant 'must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law.' " *McKay v. United States*, 657 F.3d 1190, 1196-97 (11th Cir. 2011) (quoting *Sawyer*, 505 U.S. at 336); *see also Sibley*, 377 F.3d at 1205 (describing how a movant claiming actual innocence of his capital sentence must show that he is innocent of the death penalty because none of the aggravating factors legally necessary for invocation of the death penalty applied). The Supreme Court has acknowledged the difficulty in fitting the actual innocence doctrine " into the context of an alleged error at the sentencing phase of a trial on a capital offense." *Sawyer*, 505 U.S. at 340 (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)). Accordingly, the Eleventh Circuit has articulated the following rigorous test:

> In the capital sentencing context, the defendant becomes eligible for the death penalty only if the sentencing body *correctly* finds that he has committed a crime for which the sentencing body *could*, in its discretion, sentence him to death. Thus, a petitioner may make a

colorable showing that he is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates *all* of the aggravating factors found to be present by the sentencing body. That is, but for the alleged constitutional error, the sentencing body *could not* have found *any* aggravating factors and thus the petitioner was ineligible for the death penalty. In other words, the petitioner must show that absent the alleged constitutional error, the jury would have lacked the discretion to impose the death penalty; that is, that he is *ineligible* for the death penalty.

*Johnson v. Singletary*, 938 F.2d 1166, 1183 (11th Cir. 1991) (emphasis in original).

Construing his habeas petition liberally, Mashburn does allege several ineffective assistance of trial counsel claims that could equate to an argument that he is actually innocent of, or in other words ineligible for, the death penalty. Before addressing those claims, however, the Court first notes that it is unclear whether *McQuiggin*, which addressed the petitioner's claim that he is actually innocent of the underlying crime committed, can be extended to mean that an "actually innocent of the death penalty" claim can also serve as an equitable exception to the AEDPA's time-bar. For the purposes of discussion, however, the Court will assume that *McQuiggin*'s holding reaches these types of claims.

Mashburn alleges in his habeas petition that, had his trial counsel not been constitutionally ineffective in failing to challenge the robbery and burglary aspects of the murders, which were used as two out of the four aggravating factors making him

eligible for the death penalty, then four out of the five capital murder counts would have been eliminated at trial and the use of the robbery and burglary counts as aggravating factors at the sentencing phase would have been unavailable.  In support of this claim, Mashburn discusses evidence in the form of witness testimony that Eva Birmingham's former home had been burglarized several months before the night of the murders, that several of the items supposedly stolen from her house on the night of the murders may have been stolen from her former home on a prior occasion instead, and that other items of valuable jewelry were not taken from her home on the night of the murders.  Mashburn says that his counsel should have used this evidence to challenge the prosecution's theory that the murders were committed for pecuniary reasons.  However, this ineffective assistance of counsel claim is not sufficient to show that Mashburn was actually innocent of the death penalty because, even taking away the four burglary and robbery-related counts and the two burglary and robbery-related aggravating factors, one count of capital murder would have remained that Mashburn was charged with (count five charging him with murder made capital because he killed Henry and Eva Birmingham by one act or pursuant to one scheme or course of conduct) and two aggravating circumstances supporting his eligibility for the death penalty would have remained (that the capital offenses were especially heinous,

atrocious and cruel and that Mashburn intentionally caused the death of two or more people by one act or pursuant to one scheme or course of conduct).  In other words, Mashburn has not shown that a reasonable juror would not have found one or both of the other two aggravating factors that made Mashburn eligible for the death penalty. *See Johnson*, 938 F.2d at 1183 (petitioner must be able to show that but for the alleged constitutional error, the sentencing body would not have found *any* aggravating factors).

Mashburn's other ineffective assistance of counsel claims fare no better. Mashburn claims that his counsel failed to raise a voluntary intoxication argument that could have been asserted to negate that he went to Henry and Eva Birmingham's home with the intent to commit a robbery and burglary.  However, as noted above, taking away the two aggravating factors related to robbery and burglary, the jury still could have found the existence of one of the two other aggravating factors.  Mashburn also claims that counsel failed to raise an argument that he murdered Henry Birmingham in self defense.  Because this claim makes no corresponding argument with regard to his murder of Eva Birmingham, it doesn't negate the existence of the aggravating factors.  Finally, Mashburn argues that counsel was ineffective for failing to present certain evidence in mitigation.  However, the Supreme Court has rejected

this type of argument as a means of claiming actual innocence of the death penalty. *See Sawyer*, 505 U.S. at 347 (" [T]he 'actual innocence' requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error.").

In sum, after assuming without deciding that a claim of "actual innocence of the death penalty" may serve as an equitable exception to an untimely-filed petition, and then independently combing through Mashburn's habeas petition for alleged errors related to his innocence of either the crimes committed or the death penalty imposed, this Court finds that Mashburn does not have a colorable claim that he is actually innocent of the death penalty such that there would be a fundamental miscarriage of justice for this Court to fail to consider his time-barred petition.

## IV.   Conclusion

Mashburn's federal habeas petition is barred by the one-year statute of limitations, and he has failed to prove that he is entitled to an equitable exception from that deadline.  For the foregoing reasons, the Respondent's motion to dismiss is due to be granted and Mashburn's § 2254 petition is due to be dismissed.

This Court may issue a certificate of appealability " only if the applicant has a

made a substantial showing of the denial of a constitutional right."   28 U.S.C.

2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable

jurist would find the district court's assessment of the constitutional claims debatable

and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues

presented were adequate to deserve encouragement to proceed further." *Miller-El v.

Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted).  This Court finds

Mashburn's claims do not satisfy either standard.

A separate order will be entered.

Done this 20th day of January 2015.

L. Scott Coogler
United States District Judge
[160704]