FILED
2021 Mar-31  PM 02:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **ELLIS LOUIS MASHBURN, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **1:14-cv-01829-LSC** |
| | ) | |
| | ) | |
| **JEFFERSON S. DUNN,** | ) | |
| **Commissioner, Alabama** | ) | |
| **Department of Corrections, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM OF OPINION

Ellis Louis Mashburn, Jr. ("Mashburn") has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. (*See generally* Doc. 24) (Mashburn's amended and operative habeas petition). Mashburn challenges the constitutionality of his five capital convictions and death sentence in the Circuit Court of Calhoun County, Alabama for murdering his grandmother, Clara Eva Birmingham, and step-grandfather, Henry Owen Birmingham, Jr. After careful consideration, the Court denies Mashburn's petition. The Court begins with the background of Mashburn's death penalty proceedings.

## I.    BACKGROUND

### A.    Facts of the Capital Offenses

Quoting from the trial court's amended sentencing order, the Alabama Court of Criminal Appeals ("ACCA") summarized the facts of the double murder and the surrounding circumstances as follows:

> On the 30th day of October 2002, the bodies of Henry Owen Birmingham, Jr. and Clara Eva Birmingham were discovered in their home at 205 Melanie Lane, Alexandria, Calhoun County, Alabama. Both had been severely beaten and stabbed. It was determined that the deaths occurred during the evening hours of October 29, 2002.
>
> The Calhoun County Sheriff's Office, with primary assistance from the Alabama Bureau of Investigation, the Department of Forensic Sciences, undertook the investigation. The crime scene, as the evidence reflects, was extremely bloody and it was apparent that a substantial struggle had taken place between the victims and their assailant or assailants. Too, it appeared that whoever had entered the home had not done so by forcible entry against the structure itself and, inferentially, had more likely than not been admitted entry initially.
>
> Numerous items of evidence were collected by both the Calhoun County Sheriff's Office investigators and the Alabama Department of Forensic Sciences. The scene was kept secured and guarded for several days which enabled the DFS criminalists to study, differentiate and collect trace evidence for analysis. While the scene was in great disarray, indicating a substantial and relatively lengthy struggle, especially in light of the victims' ages and states of health, and even though there was a large quantity of blood from the victims, DFS scientists were able to identify and recover blood spatter residue that was not from either of the victims.

Through various leads and investigation, three suspects were identified. These persons were Ellis Louis Mashburn, Jr., the grandson of Clara Eva Birmingham, Tony Brooks and Jeremy Butler...

. . . .

[]Based upon the evidence presented, the Court *finds*:

> 1. [Mashburn], while accompanied by at least one other individual, went to the home of Henry Owen Birmingham, Jr., and Clara Eva Birmingham in the late afternoon or early evening hours of October 29, 200[2]. The apparent reason for the visit was for the purpose of the theft of property and perhaps for the purpose of confronting Henry Owen Birmingham, Jr. In any event, the Birmingham home was invaded either by force or by the application of force to an occupant after entry by [Mashburn] as proven by trace evidence recovered. By testimony presented by a witness to whom [Mashburn] had said to have confessed, he and his accomplice, Tony Brooks, were armed with at least a knife and a hatchet.

> 2. The fact that certain items of personal property, namely jewelry, of Clara Eva Birmingham were recovered from or were traceable to [Mashburn] after the home invasion, the reasonable inference is that [Mashburn] went to the Birmingham residence for the purpose of obtaining money or things of value.

> 3. The bodies of Henry Owen Birmingham, Jr., and Clara Eva Birmingham were transported to the Cooper Green Hospital forensic autopsy facility where they were each subjected to a post-mortem examination by Dr. Joseph Embry, State Medical Examiner. The results of the autopsies were that each victim died from multiple stab and sharp instrument wounds and blunt-force trauma to the head. Crime scene photographs, autopsy photographs and the testimony of Dr. Embry showed that each victim

suffered repeated wounds from a knife or knife-like instrument, that the wounds were vicious and delivered in such a way as to indicate an attack whereby each defended themselves and were obviously aware of the extent and nature of the attack and their impending deaths. The crime scene, too, indicated that both victims resisted attack and bore witness to the violence associated with their deaths.

4. Whether either victim was able to appreciate the plight and suffering of the other or not, the crime scene and the autopsy findings clearly indicate each would have been aware of the soon-to-be-fatal assault being committed upon them individually.

5. Other than [Mashburn's] plea of guilty, the most compelling evidence was the DNA analysis and comparison of crime scene blood with that of [Mashburn] and the testimony of a former cellmate of [Mashburn], Michael Wayne Simpson. Four blood traces recovered from the scene, three in the master bedroom and one from the wall in the den, matched that of the Defendant, Ellis Mashburn, with a computed population frequency of 1:1.2 quintillion non-related white individuals and 1:1.3 quintillion non-related black individuals. To strengthen the connection of the trace evidence recovered, [Mashburn] was observed to have a fresh laceration on his left hand that he stated he had himself sewed up after 'cutting it on a fence' at his residence. Additionally, Michael Wayne Simpson testified that [Mashburn] had confessed to him about the killing of his grandmother and step-grandfather while accompanied by Tony Brooks. [Simpson's] testimony relating what he stated . . . [Mashburn] told . . . him was confirmed by various aspects of the crime scene.

*Mashburn v. State (Mashburn II)*, 148 So. 3d 1094, 1102-04 (Ala. Crim. App. 2013) (internal quotation marks omitted) (emphasis in the trial court's amended order) (some alterations added); [1] (*see also* Doc. 30-29 at 55-66.)

## B.    Procedural History

A Calhoun County Grand Jury indicted Mashburn for robbing, burglarizing, and murdering the Birminghams in October 2002 at their home. (Doc. 30-1 at 26-27; Doc. 30-29 at 1-2.) The Grand Jury charged Mashburn with five capital offenses—two counts for murdering the Birminghams during a robbery, two counts for murdering them during a burglary, and one count for murdering them by an act, scheme, or course of conduct. *Mashburn v. State (Mashburn I)*, 7 So. 3d 453, 455-56 (Ala. Crim. App. 2007); *see also* § 13A–5–40(a)(2), (4), (10), Ala. Code 1975 (classifying murder during a robbery in the first degree, murder during a burglary in the first degree, and murder of "two or more persons . . . by one act or pursuant to one scheme or course of conduct" as capital crimes).

Mashburn pled guilty to the capital counts, and the State presented its guilt-phase case to a jury. *Mashburn I*, 7 So. 3d at 456; *see also* § 13A–5–42, Ala. Code 1975 (providing that a jury may consider a guilty plea when determining whether the state

---

[1]    *Mashburn II* refers to the ACCA's collateral appeal opinion. *Mashburn I*, *infra*, refers to the ACCA's decision on direct appeal.

has "prove[n] the defendant's guilt of the capital offense beyond a reasonable doubt"). On September 19, 2006, the jury convicted Mashburn on all counts. (Doc. 30-2 at 79-83; *Mashburn I*, 7 So. 3d at 456).

The jury's guilty determination triggered penalty-phase proceedings under Alabama law. *Mashburn I*, 7 So. 3d at 456. After a penalty hearing, the jury found unanimously in a special verdict that Mashburn's crimes "were especially heinous, atrocious or cruel when compared to other capital offenses[.]" (Doc. 30-2 at 84.) Eleven of twelve jurors recommended that Mashburn receive a death sentence. (Doc. 30-2 at 85; *Mashburn I*, 7 So. 3d at 456). The trial court held a sentencing hearing, accepted the jury's penalty findings, and sentenced Mashburn to death. (Doc. 30-29 at 3; *Mashburn I*, 7 So. 3d at 456).

Mashburn appealed, and the ACCA rejected the bulk of his challenge but remanded requiring "the trial court [to] enter a new sentencing order that complie[d] with the requirements of § 13A–5–47(d), Ala. Code 1975."[2] *Mashburn I*,

---

[2] The language of the Alabama Criminal Code provision governing Mashburn's sentencing at that time stated:

Based upon the evidence presented at trial, the evidence presented during the sentence hearing, and the pre-sentence investigation report and any evidence submitted in connection with it, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52. The trial court shall also enter written findings of facts summarizing the crime and the defendant's participation in it.

7 So. 3d at 465. As documented in the post-remand judgment and sentencing memorandum, the trial court found that Mashburn's intentional killing of two people during the course of a burglary and robbery and the jury's special verdict finding supported four aggravating circumstances. (Doc. 30-29 at 55, 62.) The trial court recognized the absence of a unanimous recommendation of death as a mitigating circumstance. (*Id.* at 65.) The trial court identified Mashburn's acceptance of legal responsibility; insignificant criminal history; young age; dysfunctional family unit; histories of emotional, physical, and substance abuse; untreated Attention Deficit or Attention Deficit Hyperactivity Disorders; difficult birth, including possible anoxia; lack of mental health treatment, including reports of hearing voices; and the firm meaning of a life sentence without parole as other established mitigating circumstances. (Doc. 30-29 at 63-64; *see also Mashburn II*, 148 So. 3d at 1131 (referencing trial court's mitigating findings listed in Mashburn's Rule 32 petition)). While the trial court accepted nearly all of Mashburn's mitigating factors, it rejected Mashburn's reliance on organic brain injury and "significant" mental dysfunction because the asserted conditions lacked a "reliable degree of proof" within the record, including contrary evidence showing that Mashburn had

---

§ 13A–5–47(d), Ala. Code 1975. As amended in 2017, these same sentencing requirements are incorporated within § 13A–5–47(b).

"a structurally normal brain for a male of his age." (Doc. 30-29 at 65.) The trial court concluded that the aggravating aspects of Mashburn's capital offenses "as found by the Jury in its guilt and special verdicts . . . . clearly outweigh[ed]" the mitigating factors. (*Id.*)

On return to the ACCA, the appellate court noted that the trial court had "complied with [the remand] instructions" and affirmed Mashburn's convictions and sentence. *Mashburn I*, 7 So. 3d at 465, 467. The Alabama Supreme Court and the United States Supreme Court denied certiorari review on October 24, 2008, and June 1, 2009, respectively. *Mashburn I*, 7 So. 3d at 453 (referencing Alabama Supreme Court No. 1071307); *Mashburn II*, 148 So. 3d at 1102 (summarizing direct procedural history); (Doc. 30-29 at 67; *Mashburn v. Alabama*, 556 U.S. 1270 (2009)).

Mashburn sought post-conviction relief under Alabama Criminal Procedure Rule 32 through the same counsel who represent him here. (Doc. 30-21 at 6-79 ¶¶ 1-271.) The State answered and moved to dismiss, and Mashburn moved for the discovery "of prosecution files, records, and information necessary to a fair Rule 32 evidentiary hearing[.]" (Doc. 30-21 at 88, 159.) On April 1, 2010, the Rule 32 court summarily dismissed the petition in a 65-page order based on the trial and direct appeal records. (Doc. 30-29 at 68-132 ¶¶ 1-45.) Due to a service error, "neither party received notice of [the collateral] [c]ourt's [o]rder summarily dismissing th[e]

petition for post-conviction relief[,-" and Mashburn missed the appeal deadline. (Doc. 30-21 at 5.) Mashburn moved to set aside the judgment (doc. 30-22 at 48-53 ¶¶ 1-20) and amended his petition (doc. 30-23 at 25-60 ¶¶ 1-132 to doc. 30-24 at 1-42 ¶¶ 132-290). Based on the service error, Mashburn added a new count seeking relief because he "was without fault" in "fail[ing] to appeal within the prescribed time[,]" Ala. R. Crim. Proc. 32.1(f), and alleging due process violations (doc. 30-23 at 25; doc. 30-24 at 36-39 ¶¶ 270-288).[3] The Rule 32 court held oral argument to consider "allow[ing] [Mashburn's] Rule 32 [petition] to either be heard or . . . addressed on appeal." (Doc. 30-22 at 78.) On October 12, 2011, the collateral court granted Mashburn's request to file an out of time appeal. (Doc. 30-21 at 5.) The court denied the remainder of Mashburn's amended petition. *Id.*

The ACCA considered the late appeal and affirmed the collateral court's summary denial of Rule 32 relief in a 48-page opinion. *Mashburn II*, 148 So. 3d at 1162. The Alabama Supreme Court denied certiorari review on February 21, 2014. *See Mashburn II*, 148 So. 3d at 1094 (referencing Alabama Supreme Court No. 1121548).

---

[3]     With the exception of the service-error count, the substance of Mashburn's original and amended petitions is the same. (*Compare* Doc. 30-21 at 6-79 ¶¶ 1-271, *with* Doc. 30-23 at 25-60 ¶¶ 1-132, *and* Doc. 30-24 at 1-36, 3-42 ¶¶ 132-269, 289-290.) When citing Mashburn's Rule 32 allegations in the analysis section, the Court refers to Mashburn's amended petition.

Mashburn filed his habeas petition in this Court on September 26, 2014. (Doc. 1.) This Court dismissed the petition as untimely based on 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. (Docs. 10 and 11.) The Eleventh Circuit Court of Appeals determined that equitable tolling saved Mashburn's petition from an untimeliness dismissal and remanded the case. (Doc. 20; *Mashburn v. Comm'r, Alabama Dep't of Corr.*, 713 F. App'x 832 (11th Cir. 2017)). Post-remand, Mashburn amended his petition (doc. 24), which Respondents answered (doc. 32). Despite this Court's requirements (*see* doc. 21 at 8 § E), Respondents never filed a brief, and Mashburn replied to Respondents' answer (doc. 40). Mashburn sought an evidentiary hearing, and the Court denied that request without prejudice. (Docs. 25 and 41.)

## II.   STANDARDS OF FEDERAL HABEAS REVIEW

Title 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this action. *See Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1345 (11th Cir. 2011). Pursuant to § 2254(a), a federal district court is prohibited from entertaining a petition for writ of habeas corpus "[o]n behalf of a person in custody pursuant to the judgment of a State court" unless the petition alleges "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In other words, this Court's

review of habeas claims is limited to federal constitutional questions. Claims pertaining solely to "an alleged defect in a [state] collateral proceeding" or to "[a] state's interpretation of its own laws or rules" do not provide a basis for federal habeas corpus relief under § 2254. *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1325-26 (11th Cir. 2010) (internal quotation marks and citations omitted).

## A.     Exhaustion of State Remedies and Procedural Default

Under § 2254(b) and (c), a federal court must limit its grant of habeas applications to cases where an applicant has exhausted all state remedies. *Cullen v. Pinholster*, 563 U.S. 170, 182, 131 S. Ct. 1388, 1398-99 (2011). This means that "'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's last court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999)). Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the rule. *Id.* at 1359. The purpose of this requirement is to ensure that state courts are afforded the first opportunity to correct federal questions affecting the validity of state court convictions. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998); *see also Smith v. Newsome*, 876 F.2d 1461, 1463

(11th Cir. 1989) ("Federal courts are not forums in which to relitigate state trials.") (citation omitted). Moreover, "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues. 'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'" *Snowden*, 135 F.3d at 735 (quoting *Anderson v. Harless*, 459 U.S. 4, 5-6, 103 S. Ct. 276, 277 (1982)).

"[A]n issue is exhausted if 'the reasonable reader would understand the claim's particular legal basis and specific factual foundation' to be the same as it was presented in state court." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) (quoting *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)) (brackets in original omitted). If a petitioner fails to raise his federal claim to the state court at the time and in the manner dictated by the state's procedural rules, the state court can decide the claim is not entitled to a review on the merits, i.e., "the petitioner will have procedurally defaulted on that claim." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010). Moreover, a "state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010) (internal quotation marks omitted) (quoting *Judd v. Haley*, 250 F.3d

1308, 1313 (11th Cir. 2001)). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594 (1991). Yet as the Eleventh Circuit has noted, a claim will only be procedurally defaulted in the following circumstance:

> [A] state court's rejection of a federal constitutional claim on procedural grounds may only preclude federal review if the state procedural ruling rests upon "adequate and independent" state grounds. *Marek v. Singletary*, 62 F.3d 1295, 1301 (11th Cir. 1995) (citation omitted).
>
> We have "established a three-part test to enable us to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision." *Judd*, 250 F.3d at 1313. "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." *Id.* Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *See id.* Third, the state procedural rule must be adequate, i.e., firmly established and regularly followed and not applied "in an arbitrary or unprecedented fashion." *Id.*

*Ward*, 592 F.3d at 1156–57 (footnote omitted).

There are also instances where the doctrines of procedural default and exhaustion intertwine. For instance, if a petitioner's federal claim is unexhausted, a district court will traditionally dismiss it without prejudice or stay the cause of action to allow the petitioner to first avail himself of his state remedies. *See Rose v. Lundy*,

455 U.S. 509, 519, 102 S. Ct. 1198, 1204 (1982). But "if it is clear from state law that any future attempts at exhaustion [in state court] would be futile" under the state's own procedural rules, a court can simply find that the claim is "procedurally defaulted, even absent a state court determination to that effect[.]" *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citation omitted).

### B. Overcoming Procedural Default

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S. Ct. 2546, 2564-65 (1991) (citations and internal quotation marks omitted).

The "cause and prejudice" exception is framed in the conjunctive, and a petitioner must prove both cause and prejudice. *Id.* at 750, 111 S. Ct. at 2565. To show cause, a petitioner must prove that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). Examples of such objective factors include:

> . . . interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal

> basis for a claim was not reasonably available to counsel. In addition, constitutionally ineffective assistance of counsel . . . is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.

*McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 1470 (1991) (quotation marks, brackets, and citations omitted), *abrogated on other grounds by statute as recognized in Banister v. Davis*, 140 S. Ct. 1698, 1707 (2020). As for prejudice, a habeas petitioner must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982) (emphasis in original).

Finally, a petitioner may also escape a procedural default bar if he "can demonstrate a sufficient probability that [the court's] failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000). To make such a showing, a petitioner must establish that either: (1) "a constitutional violation has probably resulted in the conviction of one who is actually innocent," *Smith v. Murray*, 477 U.S. 527, 537, 106 S. Ct. 2661, 2668 (1986) (quoting *Carrier*, 477 U.S. at 496, 106 S. Ct. at 2649), or (2) the petitioner shows "by *clear and convincing* evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Schlup v. Delo*, 513 U.S. 298, 323, 115 S. Ct. 851, 865 (1995) (emphasis in

original) (internal quotation marks omitted) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S. Ct. 2514, 2517 (1992)).

## C.     AEDPA Review of State Court Decisions Under § 2254(d) and (e)

When a constitutional claim upon which a petitioner seeks relief under § 2254 is not procedurally defaulted but has instead been adjudicated on the merits in state courts, this Court is still restricted in its ability to grant relief on those claims by § 2254(d). "AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Guzman*, 663 F.3d at 1345 (internal quotation marks and citation omitted). To grant habeas relief on a claim, this Court must not only find that the constitutional claims are meritorious, but also that the state court's resolution of those claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *see also Boyd v. Allen*, 592 F.3d 1274, 1292 (11th Cir. 2010) (quoting § 2254(d)). The burden of showing that an issue falls within § 2254(d)(1) or (d)(2) is upon the petitioner. *See Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002). Section 2254(d)(1)'s "contrary to" and "unreasonable

application of" clauses have independent meanings. *See Alderman v. Terry*, 468 F.3d 775, 791 (11th Cir. 2006) ("[T]he 'contrary to' and 'unreasonable application' clauses are interpreted as independent statutory modes of analysis.") (citation omitted). A state court's decision is contrary to "clearly established precedents [of the Supreme Court of the United States] if it applies a rule that contradicts the governing law set forth in [the Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of th[e] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005) (citation omitted). On the other hand, to determine whether a state court's decision is an "unreasonable application" of clearly established federal law, the Supreme Court has stated:

> The pivotal question is whether the state court's application of the [relevant constitutional] standard was unreasonable. . . . For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the [relevant constitutional] standard itself.

> A state court's determination that a claim lacks merits precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. And as the [Supreme Court] has explained, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

*Harrington v. Richter*, 562 U.S. 86, 100-01, 131 S. Ct. 770, 785-86 (2011) (citations, alteration, and quotation marks omitted) (emphasis in original); *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Guzman*, 663 F.3d at 1346 ("Ultimately, before a federal court may grant habeas relief under § 2254(d), 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103, 131 S. Ct. at 786-87). As the Supreme Court has stated, "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102, 131 S. Ct. at 786.

Moreover, a state court's factual determination is entitled to a presumption of correctness under § 2254(e)(1). And commensurate with the deference accorded to a state court's factual findings, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward,* 592 F.3d at 1155-56 (alterations in original) (quoting § 2254(e)(1)).

### D.   The Burden of Proof and Heightened Pleading Requirements for Habeas Petitions

Additionally, because habeas corpus review is limited to review of errors of constitutional dimension, a petitioner "must meet [the] heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2(c)." *McFarland v. Scott*, 512 U.S. 849, 856, 114 S. Ct. 2568, 2572 (1994) (citation omitted). "[T]he petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Mayle v. Felix*, 545 U.S. 644, 655, 125 S. Ct. 2562, 2570 (2005) (quoting Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts). The burden is on the habeas petitioner "to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) (citation omitted); *see also Smith v. Wainwright*, 777 F.2d 609, 616 (11th Cir. 1985) (recognizing that a general allegation of ineffective assistance of counsel is insufficient; a petition must allege specific errors in counsel's performance and facts showing prejudice).

### E.   The General Standard for Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court established the following two-pronged standard for judging, under the Sixth Amendment, the effectiveness of attorneys who represent criminal defendants at trial or on direct appeal:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S. Ct. at 2064.

Because *Strickland*'s preceding two-part test is clearly framed in the conjunctive, a petitioner bears the burden of proving both "deficient performance" and "prejudice" by "a preponderance of competent evidence[.]" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc); *see also Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted). Further, when assessing ineffective assistance of counsel claims:

[I]t is important to keep in mind that in addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a State court's decision—when we are considering whether to grant federal habeas relief from a State court's decision. Thus, [a petitioner] not only has to satisfy the

elements of the *Strickland* standard, but he must also show that the State court applied *Strickland* to the facts of his case in an *objectively unreasonable manner*.

*Williams v. Allen*, 598 F.3d 778, 789 (11th Cir. 2010) (brackets in original omitted) (citations and quotation marks omitted) (emphasis in original).

In order to establish deficient performance, a habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064. That reasonableness is judged against "prevailing professional norms." *Id.*, 104 S. Ct. at 2065. Moreover, under *Strickland*, lower federal courts must be "highly deferential" in their scrutiny of counsel's performance. *Id.* at 689, 104 S. Ct. at 2065. As the *Strickland* Court outlined:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.*, 104 S. Ct. at 2065 (citations and quotation marks omitted).

Simply put, a habeas petitioner "must establish that no competent counsel would have taken the action that his counsel did take" to overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Chandler*, 218 F.3d at 1315. The reasonableness of counsel's performance is judged from the perspective of the attorney, at the time of the alleged error, and in light of all the circumstances. *See, e.g.*, *Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008) ("We review counsel's performance 'from counsel's perspective at the time,' to avoid 'the distorting effects of hindsight.'") (quoting *Strickland*, 466 U.S. at 689).

To satisfy the prejudice prong, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Stated differently, "[a] finding of prejudice requires proof of unprofessional errors so egregious that the trial was rendered unfair and the verdict rendered suspect." *Johnson v. Alabama*, 256 F.3d 1156, 1177 (11th Cir. 2001) (citations and internal quotation marks omitted). Further, the fact that counsel's "errors had some conceivable effect on the outcome of the proceeding" is

insufficient to show prejudice. *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067. Therefore, "when a petitioner challenges a death sentence, 'the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" *Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007) (quoting *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069).

Because *Strickland* and § 2254(d) both mandate standards that are "'highly deferential,'" "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105, 131 S. Ct. at 788 (citations omitted). The inquiry is not then "whether counsel's actions were reasonable" but is instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The court must determine "whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 101, 131 S. Ct. at 785. This "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1268 (11th Cir. 2012) (internal quotation marks omitted).

Finally, "[s]tate court findings of historical facts made in the course of evaluating an ineffectiveness claim are subject to a presumption of correctness under 28 U.S.C. § 2254(d)." *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001).

### 1.    The *Martinez v. Ryan* Rule

In *Martinez v. Ryan*, the Supreme Court announced "a narrow exception" to the procedural default rule of *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565, in the limited circumstances where a state law "requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding[.]" 566 U.S. 1, 9, 14, 132 S. Ct. 1309, 1315, 1318 (2012). The exception applies only when four conditions are met:

> (1) a state requires a prisoner to raise ineffective-trial-counsel claims at the initial-review stage of a state collateral proceeding and precludes those claims during direct appeal; (2) the prisoner did not comply with state rules and failed properly to raise ineffective-trial-counsel claims in his state initial-review collateral proceeding; (3) the prisoner did not have counsel (or his appointed counsel was ineffective by not raising ineffective-trial-counsel claims) in that initial-review collateral proceeding; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a "substantial" ineffective-trial-counsel claim.

*Arthur v. Thomas*, 739 F.3d 611, 629 (11th Cir. 2014) (footnote omitted) (citing *Martinez*, 566 U.S. at 13-14, 132 S. Ct. at 1318-19). A following case, *Trevino v. Thaler*, 569 U.S. 413, 133 S. Ct. 1911 (2013), extended the *Martinez* rule to state systems in

which it was "virtually impossible" for ineffective assistance claims to be raised on direct appeal. *Id.* at 417, 429, 133 S. Ct. at 1915 (internal quotation marks omitted).

In other words, to prevail under *Martinez*, a petitioner must demonstrate that his trial counsel were ineffective under *Strickland* in their treatment of a particular issue and also that his initial-review collateral appeal counsel were ineffective under *Strickland* for failing to raise a claim of ineffective assistance of trial counsel concerning that issue. As the Eleventh Circuit has explained, the petitioner "must show more than the mere fact [collateral counsel] failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014) (emphasis in original). In this limited case, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial[.]" *Martinez*, 566 U.S. at 17, 132 S. Ct. at 1320.

The *Martinez* rule applies only in initial-review collateral proceedings; it "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16, 132 S. Ct. at 1320. The Eleventh Circuit has held that *Martinez* does not serve

as a vehicle to allege a freestanding claim of ineffective assistance of state post-conviction counsel. *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1262-63 (11th Cir. 2014); *see also* 28 U.S.C. § 2261(e) ("The ineffectiveness or incompetence of counsel during State or Federal post-conviction proceedings in a capital case shall not be a ground for relief in a proceeding arising under section 2254.").

## III.   DISCUSSION OF MASHBURN'S CLAIMS

Mashburn has completely abandoned many of his § 2254 allegations. Consequently, the Court begins by identifying those habeas claims in which a straightforward dismissal is suitable. The Court then considers Mashburn's remaining allegations and request for an evidentiary hearing as well as Respondents' defenses. Because this is a death penalty case, the Court has given Mashburn the benefit of the doubt by developing and giving context to his cited authorities to determine whether he overcomes any procedural defenses and satisfies his AEDPA burden. Consistent with that deeper review, Mashburn is not entitled to habeas relief or an evidentiary hearing on the remainder of his petition.

### A.    Abandoned and Conclusory Claims

Mashburn has alleged many claims in his habeas petition without citing case authority, discussing record evidence, or replying to Respondents' contentions about dismissal. (*See generally* Docs. 24, 32 and 40.) Consistent with his silence,

Mashburn has abandoned those portions of his petition or waived the right to pursue them as habeas claims. *See Tharpe v. Humphrey*, No. 5:10-CV-433 CAR, 2014 WL 897412, at *3 n.4 (M.D. Ga. Mar. 6, 2014) (raising a habeas claim without developing an argument constitutes abandonment), *aff'd sub nom. Tharpe v. Warden*, 834 F.3d 1323 (11th Cir. 2016); *see also Flanigan's Enters., Inc. v. Fulton Cty.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (asserting a claim without "elaborat[ion] or . . . citation of authority in support" waives that allegation), *superseded on other grounds by statute as stated in Buehrle v. City of Key West*, 813 F.3d 973 (11th Cir. 2015).

Alternatively, Mashburn's conclusory approach means that he has failed to show why AEDPA's predominant rule precluding habeas relief on exhausted claims does not apply. *See Tharpe*, 2014 WL 897412, at *3 n.4 (observing that merely alleging claims is inadequate to show "that the state courts' adjudications of the[m] . . . were contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that the decisions were based on unreasonable factual findings"). Mashburn's mere belief that the ACCA misjudged the adequacy of his claims to a degree that a § 2254(d) exception should preserve them misses the mark. Instead, Mashburn must persuade this Court—with case authority under (d)(1) or record evidence under (d)(2)—to apply an AEDPA exception as he "has the burden of establishing his right to federal habeas relief and of proving all facts necessary to

27

show a constitutional violation." *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) (citing *Delap v. Dugger*, 890 F.2d 285, 311 (11th Cir. 1989), *abrogated on other grounds as recognized in Floyd v. Sec'y, Fla. Dep't of Corr.*, 638 F. App'x 909 (11th Cir. 2016)); *see also Richter*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's [AEDPA] burden still must be met by showing there was no reasonable basis for the state court to deny relief."). Thus, without § 2254(d)(1) or (d)(2) in play, providing an in-depth analysis of these allegations is unnecessary because the appropriate result under AEDPA— habeas relief "shall not be granted" is straightforward. 28 U.S.C. § 2254(d); *see Early v. Packer*, 537 U.S. 3, 7 (2002) ("When a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, 28 U.S.C. § 2254(d) forecloses relief unless the state court's adjudication of the claim" results in actionable constitutional error under (d)(1) or (d)(2)).

Accordingly, the Court dismisses the following parts of Mashburn's petition as abandoned or unproven on habeas review:[4]

---

[4]    Mindful of the piecemeal pitfalls described in the pre-AEDPA authority of *Clisby v. Jones*, 960 F.2d 925, 935-36 (11th Cir. 1992), this dismissal applies to all federal claims that these allegations might present.

1. Claim A—introductory paragraphs to ineffective assistance of trial counsel guilt-phase subclaims (doc. 24 at 8-10 ¶¶ 19-23)[5] and subclaim A.6 (doc. 24 at 17 ¶ 59);

2. Claim B—introductory paragraphs to ineffective assistance of trial counsel penalty-phase subclaims (doc. 24 at 18-19 ¶ 61-62);[6]

---

[5]     AEDPA review applies even though the ACCA did not address paragraphs 41 through 44 within Mashburn's Rule 32 petition that correspond with the initial part of Claim A. *See generally Mashburn II*, 148 So. 3d at 1123-31. Under the look-through presumption, a "federal [habeas] court should 'look through' [an] unexplained decision to the last related state-court decision that does provide a relevant rationale . . . [and] then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, ___ U.S. ___, 138 S. Ct. 1188, 1192 (2018). The collateral court characterized the preliminary paragraphs as general background to the subclaims and dismissed them as inadequate statements of independent relief. (Doc. 30-29 at 73-74 ¶ 7.) Consequently, the Rule 32 court's dismissal for insufficient pleading becomes the merits-based decision to which AEDPA deference attaches. Mashburn challenges neither the Rule 32 court's dismissal as one subject to habeas review under a § 2254(d) exception nor Respondents' position that "[t]o the extent that Mashburn is attempting to raise any claims in those paragraphs, such claims are conclusory in nature and fail to state a claim for relief under 28 U.S.C. § 2254." (Doc. 32 at 10 ¶ 17; Doc. 40 at 10-13.) Thus, Mashburn cannot obtain habeas relief based on Claim A's preliminary paragraphs.

[6]     Neither the ACCA nor the collateral court discussed the allegations within Mashburn's Rule 32 petition—paragraphs 80 and 81—that correspond with the introductory paragraphs to Claim B. *See generally Mashburn II*, 148 So. 3d at 1131-1143; (*see* Doc. 30-29 at 86-88 ¶¶ 16-17) (addressing paragraph 79 and turning to paragraph 82 without mentioning paragraphs 80 and 81). Still, a dismissal is appropriate because Mashburn offers nothing to refute Respondents' answer that Claim B's initial allegations "are conclusory in nature and fail to state a valid claim for relief under 28 U.S.C. § 2254." (*Compare* Doc. 32 at 49 ¶ 30, *with* Doc. 40 at 13-15.)

3.      Claim C—ineffective assistance of trial counsel for poorly presenting the mitigation case, including introductory paragraphs and subclaims C.1 to C.4 (doc. 24 at 39-49 ¶¶ 152-192);[7]

4.      Claim D—ineffective assistance of trial counsel for omitting certain mitigating evidence, including introductory paragraphs and subclaims D.1 to D.6, (doc. 24 at 49-64 ¶¶193-246);[8]

5.      Claim E—ineffective assistance of trial counsel for not objecting to the prosecutor's "nullifying" statements about mitigating evidence (doc. 24 at 64-65 ¶¶ 247-251);

---

[7]      Consistent with the record and reasoning in n.5, *supra*, dismissal of the introductory paragraphs to Claim C which correspond with paragraphs 170 through 174 of Mashburn's Rule 32 petition is appropriate. *See generally Mashburn II*, 148 So. 3d at 1143-1151; (Doc. 30-29 at 105-06 ¶ 30; Doc. 32 at 77 ¶ 35; Doc. 40 at 10-15.)

[8]      Consistent with the record and reasoning in n.5, *supra*, dismissal of the introductory paragraphs to Claim D is appropriate. *See generally Mashburn II*, 148 So. 3d at 1151-1160 (omitting an evaluation of comparable paragraphs 211 through 218 from Mashburn's Rule 32 petition). The Rule 32 court identified paragraphs 211 through 218 as "solely . . . a factual narrative regarding [Mashburn's] upbringing." (Doc. 30-29 at 114 ¶ 36.) The collateral court described the later paragraphs of 219 through 223, including faulting counsel for poorly explaining "'why Mr. Mashburn's life had taken such a vicious downturn and why Mr. Mashburn deserved to live[,]'" as a "respris[al] [of] [Mashburn's] claim that trial counsel should have presented mitigation evidence more effectively." (Doc. 30-29 at 114 ¶ 36; *compare* Doc. 24 at 53-54 ¶ 205.) The Rule 32 court dismissed this claim for insufficient pleading and lack of record support. (Doc. 30-29 at 114-15 ¶ 36.) Mashburn opposes neither the Rule 32 court's dismissal of these allegations as one triggering review under AEDPA nor Respondents' defense that the allegations are insufficient to state a claim under § 2254. (Doc. 32 at 95-96 ¶ 40; Doc. 40 at 10-15.)

6.      Claim F—prosecutorial suppression of evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (doc. 24 at 65-66 ¶ 252);

7.      Claim G—due process violation based on the delayed notice of the Rule 32 court's order of dismissal (doc. 24 at 66-70 ¶¶ 253-270);[9]

8.      Claim H—prosecutorial racial bias in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986) (doc. 24 at 70-71 ¶¶ 271-73); and

9.      Claim J—cumulative effect of errors warrant a new trial and resentencing (doc. 24 at 72-73 ¶ 274).

## B.      Alleged Ineffective Guilt Phase Assistance

Mashburn alleges in the preliminary section of Claim A that his trial counsel provided ineffective guilt-phase assistance in violation of the Sixth Amendment to the United States Constitution under *Strickland, supra, Williams v. Taylor*, 529 U.S. 362 (2000), and *Wiggins v. Smith*, 539 U.S. 510 (2003).[10] (Doc. 24 at 8 ¶ 19.)

---

[9]     Mashburn reasserts the Rule 32 dismissal order service mishap in the introduction, procedural background, and evidentiary hearing sections of his reply (doc. 40 at 5-6, 7, 16-17) but abandons the allegation as an independent due process or other constitutional violation. Also, the collateral court granted Mashburn's request to file an untimely appeal challenging the denial of his Rule 32 petition, *Mashburn II*, 148 So. 3d at 1104, and Mashburn offers no basis for applying a § 2254(d) exception to the remaining allegations in this subclaim (*see generally* Doc. 40).

[10]    Mashburn alleges in his petition that the ineffective assistance of trial counsel violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (Doc. 24 at 8 ¶ 19.) The Supreme Court applied the Sixth Amendment right to counsel to the states through the Fourteenth Amendment in *Gideon v. Wainwright*, 372 U.S 335, 342 (1963), and a *Strickland* ineffectiveness claim arises under the Sixth Amendment. *See Borden v. Allen*, 646 F.3d 785, 818 (11th Cir. 2011) ("The right of a state criminal defendant to effective assistance of counsel springs from the Sixth and Fourteenth

Mashburn divides Claim A into six *Strickland* subclaims, including several that he links to the penalty phase outcome.[11]  (Doc. 24 at 10; *id.* at 12 ¶ 35; *id.* at 15 ¶ 50.) Mashburn asserts that trial counsel should have (1) "challenge[d] the robbery and burglary aspect of Counts I-IV, which [became] . . . an aggravating factor" (doc. 24 at 10) (emphasis omitted); (2) "negate[d] the prosecutor's allegations [about] . . . Mashburn's mental state" by arguing voluntary intoxication (doc. 24 at 13) (emphasis omitted); (3) introduced evidence establishing that he acted in self-defense (doc. 24 at 14); (4) "object[ed] to the cumulative and prejudicial photographs of the bodies" (doc. 24 at 14) (emphasis omitted), asserting that such evidence can influence a jury to return a death sentence based on "passion, prejudice, or another arbitrary factor" (doc. 24 at 15 ¶ 50); (5) sought a change in venue (doc. 24 at 16 ¶ 52); and (6) advised him incorrectly that he could not withdraw his guilty pleas (doc. 24 at 17).

### 1.    Procedural Defenses

---

Amendments to the United States Constitution, and such a right has been clearly established and roundly reaffirmed by the Supreme Court."); *see also Strickland*, 466 U.S. at 684-85. Because Mashburn does not elaborate why he has a cognizable Fifth, Eighth, (or aside from incorporation) Fourteenth Amendment right, he has abandoned, underdeveloped, or failed to meet his habeas burden on ineffectiveness claims based on those amendments.

[11]    Mashburn alleged seven subclaims within Claim A initially but since has abandoned *Strickland* subclaim A.6 as discussed *supra*.

Before contesting the sufficiency of these allegations substantively, Respondents argue that the fact that Mashburn pleaded guilty precludes him from obtaining habeas relief on all guilt-phase subclaims because of procedural default or waiver. (Doc. 32 at 13-14 ¶¶ 20-21.) Respondents base their procedural default defense on the fact that Mashburn never included an allegation in his Rule 32 petition seeking to void his guilty pleas as involuntary (doc. 32 at 13-14 ¶ 20), relying on the circuit court and ACCA post-conviction decisions as support (doc. 32 at 12-14 ¶¶ 18, 20). Consequently, this Court begins by examining the state courts' disposition of Mashburn's guilt-phase ineffectiveness claims.

During the post-conviction process, Respondents moved to dismiss Mashburn's *Strickland* guilt-phase claims under § 13A-5-42, Ala. Code 1975, which provides that a "guilty plea shall have the effect of waiving all non-jurisdictional defects in the proceeding resulting in the conviction except the sufficiency of the evidence." *Id.* The circuit court found that Mashburn's "knowing[] and voluntary . . . guilty [pleas] . . . estopped [him] from claiming that his trial counsel were ineffective before and during the guilt phase of his trial." (Doc. 30-29 at 75 ¶ 9; *Mashburn II*, 148 So. 3d at 1124). Consequently, the circuit court dismissed these ineffectiveness subclaims as statutorily waived. (*Id.* at 75-76 ¶¶ 8-9.) Alternatively,

the circuit court concluded that Mashburn had not pled his *Strickland* claims adequately and summarily dismissed them. *Mashburn II*, 148 So. 3d at 1124-25.

The ACCA upheld the circuit court's collateral decision without delving into the dismissals based on § 13A-5-42, Ala. Code 1975. *Mashburn II*, 148 So. 3d at 1124-25. Still, the ACCA addressed Mashburn's contention (contained only in his brief) that "his pleas were not knowingly and voluntarily entered" and rejected this nonjurisdictional and unpreserved claim on state procedural grounds. *Mashburn II*, 148 So. 3d at 1124. As the ACCA explained, "[b]ecause Mashburn did not challenge the voluntariness of his guilty pleas in his Rule 32 petition, this claim was not properly preserved and is, therefore, not properly before this Court for review." *Mashburn II*, 148 So. 3d at 1124. Respondents now argue that the ACCA's disposition of Mashburn's involuntary plea allegation constitutes "an independent and adequate state law ground" of dismissal that supports procedural default (and precludes habeas relief) because the viability of his *Strickland* subclaims depends upon an invalidation of his pleas—a procedurally closed claim under Rule 32.[12] (Doc. 32 at 14 ¶ 20.)

---

[12]    The Court has deviated somewhat from Respondents' description of their procedural default defense based on its understanding of the underlying post-conviction record.

In reply, Mashburn does not mention, much less contest the substance of Respondents' appellate preservation procedural defense to his guilt-phase ineffectiveness subclaims. (*See generally* Doc. 40 at 10-13.) Consistent with the Court's discussion of abandonment *supra*, Mashburn's omission of a cause and prejudice, independent and adequate, or other challenge to procedural default, constitutes waiver and forecloses habeas relief on these guilt-phase *Strickland* subclaims.

Respondents base their waiver defense on several federal authorities. (Doc. 32 at 13, 14 ¶¶ 19, 21.) Respondents rely on one decision for the general proposition that a voluntary guilty plea waives nonjurisdictional challenges to state and federal convictions. *See Martin v. Kemp*, 760 F.2d 1244, 1247 (11th Cir. 1985) ("If Martin's plea was voluntary, he has waived this claim and all other claims which challenge the validity of his conviction."). Respondents also rely on the § 2254 decision in *Martinez v. Sec'y, Fla. Dep't of Corr.*, 684 F. App'x 915 (11th Cir. 2017). The Court considers these waiver authorities in more detail, including to what extent Mashburn's circumstances are similar.

The petitioner based his involuntary plea claim in *Martin* on law enforcement's "refus[al] to dismiss [a] theft . . . charge against [the petitioner's wife] and threat[s] to file additional charges against her if [the petitioner] did not confess

[to stealing property] and cooperate fully with the police." 760 F.2d at 1245.

"Relying upon the transcripts of the sentencing hearing and the state habeas corpus

hearing, the district court concluded that the police had probable cause to question

[the petitioner's wife] about her involvement in the thefts and to file charges against

her." *Id.* at 1246. After determining that the "threats against [the petitioner's wife]

were lawful[,]" the district court found that neither the petitioner's "confession

[n]or his guilty plea [was] involuntary." *Id.* Likewise, the district court denied the

petitioner's "ineffective assistance of counsel claim on the ground that [he] had not

been prejudiced by his counsel's alleged failure to properly advise him on whether

to plead guilty." *Id.*

On appeal, the Eleventh Circuit acknowledged that the district court had

identified the correct legal principles for evaluating the petitioner's claim. *Id.* at 1247.

Under that framework, the petitioner's prior plea did not "absolute[ly] bar" him

from "claim[ing] that he pleaded guilty only to protect the third party." *Id.* at 1248.

Instead, a defendant who contests the voluntariness of a plea under these

circumstances has "a heavy burden to establish that the government did not observe

a 'high standard of good faith' based upon probable cause to believe that the third

party had committed a crime." *Id.* (quoting *United States v. Nuckols*, 606 F.2d 566,

569 (5th Cir. 1979)).[13] The Eleventh Circuit found that the district court committed reversible error in applying the standard because that court failed to focus on what the state knew about "[the petitioner's wife's] involvement in the crimes *at the time it made the threats*." *Id.* (emphasis in the original). Thus, the Eleventh Circuit remanded "for an evidentiary hearing on the question of whether [the] alleged threats to prosecute [the petitioner's wife] were founded in good faith upon probable cause. . . . [or] [i]f [they] were not well-founded[.]" *Id.* at 1249. Because Mashburn did not plead guilty because of alleged prosecutorial threats against someone else, *Martin*'s holding does not impact the constitutionality of his guilty pleas.

In *Martinez*, the Eleventh Circuit examined an allegation that the petitioner "would not have entered the plea and would have gone to trial if [his counsel] had properly investigated the [alibi] defense and informed him of the potential witnesses." *Martinez*, 684 F. App'x at 922. Revisiting its holding in *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015), the Eleventh Circuit observed that "an ineffective assistance of counsel claim that goes to the voluntary nature of the defendant's plea is not waived 'simply by entering a plea' because this is contrary to *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)."

---

[13]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Martinez*, 684 F. App'x at 922. The Eleventh Circuit concluded that "to the extent

that the state post-conviction court found that Martinez's *nolo contendere* plea

foreclosed his claim that his counsel was ineffective for failing to investigate the alibi

defense and improperly advising him to enter into a plea agreement, that decision

misapplies *Hill*." *Martinez*, 684 F. App'x at 922. Here, Respondents argue that the

reverse of *Martinez* is true—a waiver of Mashburn's guilt-phase *Strickland*

subclaims is consistent with *Hill* because none of the ineffectiveness allegations

impacts the voluntariness of his pleas. (Doc. 32 at 14 ¶ 21.) Respondents observe

correctly that Mashburn does not allege guilt-phase ineffectiveness in Claim A that

impacts the voluntariness of his pleas, and Mashburn does not counter Respondents'

flipside interpretation of *Martinez*.

Still, in his reply brief, Mashburn counters Respondents' waiver defense to

his guilt-phase *Strickland* subclaims by claiming that he pled guilty in violation of

*Boykin v. Alabama*, 395 U.S. 238 (1969). (Doc. 40 at 13.) Under *Boykin*, a state-court

guilty plea involves three federal constitutional rights:

> First, is the privilege against compulsory self-incrimination guaranteed
> by the Fifth Amendment and applicable to the States by reason of the
> Fourteenth. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.
> Second, is the right to trial by jury. *Duncan v. Louisiana*, 391 U.S. 145,
> 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's
> accusers. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923.

38

*Boykin*, 395 U.S. at 243; (*see also* Doc. 40 at 13) (citing *Boykin* for same constitutional principles). The Supreme Court explained that due process would not permit a "presume[d] . . . waiver of these three important federal rights from a silent record." *Id.* In *Boykin*, the gaps in the record included "no questions . . . concerning [the petitioner's] plea," "no light" as to whether pleading guilty "seem[ed] the desirable course" given the "[t]rial strategy[,]" no testimony "concerning [the petitioner's] character and background[,]" and no proof that the petitioner "had a prior criminal record." *Id.* at 239-40. The Supreme Court reversed the petitioner's death sentence in *Boykin* "'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.'" *Id.* at 244 (internal quotation marks omitted) (quoting from Alabama Supreme Court dissenting opinion).

Mashburn contends that the trial court violated *Boykin* by not advising him "of the rights he was waiving [or] ascertaining that he understood all those rights." (Doc. 24 at 72; Doc. 40 at 13.) But Mashburn cites no evidence to support these assertions. Moreover, unlike the petitioner in *Boykin*, Mashburn had a guilty plea hearing (doc. 30-6 at 90-118), during which the trial court addressed his constitutional rights to a jury trial, to remain silent, and to confront witnesses under Alabama's bifurcated capital case process (*id.* at 103-110). The trial court verified that Mashburn was pleading freely and independently because of his actual guilt and

that he was not receiving or anticipating anything in return. (*Id.* at 110-111.) During the colloquy, the trial court reviewed the details and confirmed Mashburn's understanding of each capital count. (Doc. 30-6 at 112-18.) Mashburn pled guilty to each count after affirming to the trial court that he understood the charges. (*Id.*) Thus, "plain on the face of the record . . . [is] an affirmative showing that [Mashburn's pleas] w[ere] intelligent and voluntary." *Boykin*, 395 U.S. at 242; *see also Mashburn I*, 7 So. 3d at 456 (finding that "[t]he trial court engaged [Mashburn] in a thorough colloquy . . . during which [Mashburn] admitted his guilt and expressed his desire to enter a guilty plea" in compliance with *Boykin* and Ala. R. Crim. P. 14.4). Thus, Respondents' waiver defense applies to Mashburn's guilt-phase *Strickland* claims because (1) the record plainly disproves Mashburn's assertion that he entered his pleas unknowingly or involuntarily, and (2) his ineffectiveness allegations in Claim A do not implicate the voluntariness of his pleas.

Respondents follow their collective defenses with an individualized discussion of subclaims A.1 through A.7. For each one, Respondents maintain that Mashburn has not met his burden under § 2254(d)'s deferential review, § 2254(e)(1)'s presumption of correct state court factual findings, § 2254(e)(2)'s evidentiary hearing framework, or Rule 2(c)'s heightened pleading framework.[14] (Doc. 32 at 15-

---

[14]    Under Rule 2(c) of the Rules Governing § 2254 Cases, a petitioner must:

49 ¶¶ 23-29.) While Respondents contend that Mashburn's habeas allegations fail for several burden-driven reasons, the heart of their answer is that § 2254(d) precludes habeas relief, and Mashburn has not shown otherwise. Thus, the Court proceeds with an AEDPA analysis of these ineffectiveness subclaims.

### 2.    AEDPA Assessment

Respondents base their § 2254(d) contention on the ACCA's "deni[al] [of] Mashburn's claims on the merits by affirming the circuit court's alternative" ground for dismissing his guilt-phase *Strickland* claims—inadequate pleading. (Doc. 32 at 14-15 ¶ 22.) To provide background for the AEDPA analysis, the Court highlights the ACCA's reasons for affirming the circuit court's summary dismissal of these ineffectiveness allegations.

### a.    The ACCA's Decision

Preliminarily, the ACCA observed that "Mashburn alleged virtually no facts regarding the circumstances of the crimes or the State's evidence against him" and offered "only one or two sentence summaries of the [prosecution] witnesses' testimony, followed by conclusory statements that his counsel did not object to the

---

(1) specify all the grounds for relief available . . . ;
(2) state the facts supporting each ground; [and]
(3) state the relief requested[.]

Rule 2(c)(1)-(3).

testimony." *Mashburn II*, 148 So. 3d at 1123. After discussing several factual deficiencies, the ACCA explained that it had no duty "to search the record from a petitioner's direct appeal to ascertain the factual basis for a postconviction claim." *Id.* Consequently, the ACCA considered the adequacy of the guilt-phase *Strickland* claims "in light of Mashburn's failure to allege any specific facts regarding the evidence presented by the State against him." *Id.*

The ACCA affirmed the summary dismissal of Mashburn's Rule 32 burglary and robbery ineffectiveness allegations (habeas subclaim A.1) under Alabama Criminal Procedure Rules 32.3 and 32.6(b). *Mashburn II*, 148 So. 3d at 1126. Rule 32.3 provides that a petitioner has "the burden of pleading . . . the facts necessary to entitle [him] to relief." Ala. R. Crim. P. 32.3. Rule 32.6(b) requires a petitioner to give "a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." Ala. R. Crim. P. 32.6(b). Consequently, "[a] bare allegation that a constitutional right has been violated and mere conclusions of law [are] . . . [in]sufficient to warrant any further proceedings." Ala. R. Crim. P. 32.6(b).

The ACCA described Mashburn's burglary and robbery allegations as speculative because Mashburn "did not identify in his petition a single piece of jewelry he believed had been stolen in the earlier burglary and not on the night of the

murders, and he claimed only that the jewelry '*may have been*' stolen on a previous occasion." *Id.* at 1125 (emphasis in original). The ACCA found also that Mashburn's failure to include specific facts about the crimes and the guilt-phase evidence, made it "impossible to determine whether, even accepting Mashburn's factual allegations as true, Mashburn would be entitled to relief on this claim." *Id.* at 1126.

The ACCA relied on Rules 32.3 and 32.6(b) in rejecting Mashburn's allegations that trial counsel violated *Strickland* by not pursuing an intoxication defense (subclaim A.2). *Id.* The ACCA explained that a "bare allegation of . . . tak[ing] some undisclosed amount of methamphetamine and unidentified prescription drugs at some undisclosed point in time in the days preceding the murder [wa]s simply not sufficient" to support an intoxication defense. *Id.* Instead, for intoxication to be a valid defense or warrant a jury instruction under Alabama law, Mashburn needed to present specific facts "establish[ing] that [he] was intoxicated to the point of being unable to form the intent to commit a theft or to form any other intent." *Id.* Because Mashburn's allegations were inadequate to make intoxication a relevant defense to the capital crimes, "he failed to plead sufficient facts indicating that his trial counsel were ineffective in this regard." *Id.* at 1127.

In upholding the dismissal of the ineffectiveness allegations with respect to Mashburn's acting in self-defense when he killed Mr. Birmingham (subclaim A.3),

the ACCA referenced Rules 32.3 and 32.6(b) and quoted from the self-defense provisions of § 13A–3–23, Ala. Code 1975 that were in place "[a]t the time of the crimes[.]" *Id.* at 1127. The ACCA found that Mashburn did not meet the pleading standard because he omitted facts confirming his "reasonabl[e] belie[f] that Mr. Birmingham was about to use unlawful deadly physical force or to commit a first- or second-degree assault against him" or addressing his statutory duty to retreat. *Id.* at 1128. Thus, without establishing the relevancy of self-defense factually, "Mashburn failed to plead sufficient facts indicating that his trial counsel were ineffective for not presenting evidence of [that] [theory]." *Id.*

The ACCA found that the circuit court's summary dismissal of Mashburn's *Strickland* allegations about the cumulative and prejudicial photographic evidence (subclaim A.4) was proper under Rules 32.3 and 32.6(b). *Id.* The ACCA pointed out that Mashburn "failed to plead in his petition what objection he believed counsel should have made that would have resulted in the [crime scene and autopsy] photographs being excluded." *Id.* Citing several cases, the ACCA noted that Alabama courts allow "photographs of the crime scene and victims . . . even though they might be gruesome and cumulative, if they shed light on an issue being tried" and noted also that "Mashburn [did not] plead any facts in his petition even suggesting that the photographs were inadmissible for any reason." *Id.* at 1129

44

(internal quotation marks omitted). Given this analysis, the ACCA concluded that Mashburn had "failed to plead sufficient facts indicating that his trial counsel were ineffective" for not objecting to the photographs. *Id.*

The ACCA affirmed the dismissal of Mashburn's change of venue allegations (subclaim A.5) under Rules 32.3 and 32.6(b). *Id.* The ACCA described several of Mashburn's pleading deficiencies, including not explaining why the "'numerous'" newspaper articles regarding the crimes and the trial . . . were biased or prejudicial[;]" how the newspaper articles 'saturated the community with information[;]'" or "how many prospective jurors had actually heard about the case[.]" *Id.* The ACCA noted that Mashburn had "not identif[ied] a single juror who sat on his jury who had read or heard about the case." *Id.* at 1129-1130. Given these factual flaws, the ACCA concluded that Mashburn had failed to show "a reasonable probability that a change of venue would have been granted had counsel . . . request[ed] a change of venue [and] . . . failed to plead sufficient facts indicating that his trial counsel were ineffective for not moving for a change of venue." *Id.* at 1130.

Concerning Mashburn's allegations that his trial counsel advised him incorrectly about the right to withdraw his guilty pleas (subclaim A.7), the ACCA acknowledged that "a defendant may move to withdraw a guilty plea up to 30 days after sentence is pronounced" under Alabama law. *Id.* at 1131. Still, the ACCA

affirmed the circuit court's dismissal under Rules 32.3 and 32.6(b) because "Mashburn failed to allege in his petition *when* he discussed with his counsel his desire to withdraw his pleas." *Id.* (emphasis in original). The ACCA commented that Mashburn's allegation that the discussion with counsel happened "'subsequent to pleading guilty'" was too ambiguous to support the ineffectiveness subclaim. *Id.*

Because the ACCA relied on Rule 32.6(b) in affirming the collateral court's dismissal of Mashburn's guilt-phase *Strickland* allegations, binding precedent requires this Court to treat the ACCA's decision "as a holding on the merits" and evaluate it deferentially under AEDPA. *Powell v. Allen*, 602 F.3d 1263, 1273 (11th Cir. 2010). Additionally, the Court "look[s] only to" Mashburn's Rule 32 allegations for a factually sufficient *Strickland* claim that survives AEDPA scrutiny. *Powell*, 602 F.3d at 1273. Given the ACCA's merits-based assessment of Mashburn's guilt-phase *Strickland* claims, the Court reviews the petition and reply for authority that substantiates why § 2254(d) does not preclude habeas relief. *See Borden*, 646 F.3d at 817-18 (framing the AEDPA issue as whether § 2254(d)(1)'s unreasonable application prong afforded habeas relief in light of the ACCA's "determination that [the petitioner's] relevant ineffective assistance of counsel claims were due to be

dismissed for failure to state a claim with sufficient specificity under Rule 32.6(b)").[15]

Mashburn bears the "burden to show that the state court applied *Strickland* to the fact[ual] [allegations] of his case in an objectively unreasonable manner." *Woodford*, 537 U.S. at 25. Against this backdrop, the Court considers whether Mashburn has overcome AEDPA deference to the ACCA's denial of his ineffective assistance of counsel claims.[16]

### b.   Mashburn's Unpersuasive Efforts to Obtain Habeas Relief

Within several of his Claim A's subclaims, Mashburn cites *Strickland*, *Williams*, and *Wiggins* for core ineffectiveness principles without discussing the cases factually or articulating how their holdings show that the ACCA's collateral

---

[15]      Similar to *Borden*, the Court understands that Mashburn seeks habeas relief under (d)(1)'s unreasonable application prong only and limits its AEDPA analysis to that provision accordingly. Specifically, Mashburn has not supported his subclaims with cases showing that the ACCA reached "'a conclusion opposite to that reached by [the Supreme Court]'" based on established law or "'a set of materially indistinguishable facts[,]'" *id.* at 817 (quoting *Williams*, 529 U.S. at 413) or any alleged unreasonable factual determinations based on record evidence. Alternatively, Mashburn has not developed an argument or carried his burden of demonstrating that habeas relief is appropriate under § 2254(d)(1)'s contrary to prong or (d)(2). *See Borden*, 646 F.3d at 817 (focusing analysis on the "'unreasonable application'" clause of § 2254(d)(1) because the ACCA "clearly did not reach . . . a conclusion" consistent with the contrary to clause).

[16]      In an effort to preserve all his guilt-phase subclaims under AEDPA, Mashburn cites *Boykin* and argues that the trial court's mishandling of his guilty pleas "resulted in a decision which was contrary to, and involved an unreasonable application of, already established United States Supreme Court precedent." (Doc. 40 at 13.) But as detailed when evaluating Respondents' waiver defense *supra*, the record substantiates the trial court's compliance with *Boykin*'s constitutional requirements. Consequently, Mashburn's reliance on *Boykin* does not entitle him to habeas relief.

appellate opinion falls within the unreasonable application exception to § 2254(d)'s overarching bar against habeas relief. (Doc. 24 at 8-10, 12, 17 ¶¶ 19-21, 23, 34, 58; Doc. 40 at 11.) Additionally, Mashburn mentions *Gideon*, *supra*, and *United States v. Cronic*, 466 U.S. 648 (1984), in the introduction but again provides no explanation why either one carries his AEDPA burden. (Doc. 24 at 9 ¶ 20.)

Mashburn refers to these Supreme Court cases generally and, as discussed in the abandonment section *supra*, the beginning of Claim A is without any independently actionable habeas claims. Moreover, the Supreme Court does not address guilt-phase ineffectiveness in these opinions, much less in the context of a defendant who has pled guilty to one or more capital crimes. *See Strickland*, 466 U.S. at 700 ("[R]espondent has made no showing that the justice of his sentence was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsel's assistance."); *Williams*, 529 U.S. at 390 ("In this case, Williams contends that he was denied his constitutionally guaranteed right to the effective assistance of counsel when his trial lawyers failed to investigate and to present substantial mitigating evidence to the sentencing jury."); *Wiggins*, 539 U.S. at 521 ("In this case, as in *Strickland*, petitioner's claim stems from counsel's decision to limit the scope of their investigation into potential mitigating evidence."); *Gideon*, 372 U.S. at 342 (recognizing a defendant's right to counsel under the Sixth

Amendment); *Cronic*, 466 U.S. at 657 n.20 (noting that "the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole—specific errors and omissions may be the focus of a claim of ineffective assistance as well[,]" but not considering *Strickland*'s application because the appellate court "passed" on that "type of claim"). Because these decisions do not involve a petitioner's request to set aside a conviction (or a sentence as Mashburn additionally alleges) due to guilt-phase ineffectiveness, Mashburn's reliance on them does not help him meet his AEDPA burden of demonstrating that the ACCA unreasonably rejected his guilt-phase subclaims for inadequate pleading based on Supreme Court precedent. The Court considers Mashburn's remaining Claim A authorities.

<u>Alleged Ineffectiveness on Burglary and Robbery Counts</u>

To support his burglary and robbery *Strickland* allegations in subclaim A.1, Mashburn cites direction from the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases that counsel should consider aggravating evidence "'at all stages of the case'" and the Eleventh Circuit's acknowledgement in *Williams v. Allen*, 542 F.3d at 1326, 1339 (11th Cir. 2008), that "the Supreme Court has looked to the ABA Guidelines as standards for attorney conduct." (Doc. 24 at 12 ¶ 34; Doc. 40 at 12.) Again, Mashburn relies on

these authorities for broad propositions but provides no explanation how either advances his position that the ACCA's decision falls within AEDPA's unreasonable application clause. Thus, Mashburn does not fulfill his AEDPA burden based on the ABA Guidelines or *Williams*.

Mashburn relies also on the Eighth Circuit Court of Appeals' pre-AEDPA death penalty decision in *Parker v. Bowersox*, 188 F.3d 923 (8th Cir. 1999), to demonstrate that the ACCA unreasonably applied Supreme Court precedent in analyzing the adequacy of this subclaim. (Doc. 24 at 12 ¶ 34; Doc. 40 at 12.) The jury in *Parker* convicted the petitioner of murder and found one aggravating factor to support the death penalty—the petitioner had murdered the victim "because she was a potential witness in the assault case" against him. *Parker*, 188 F.3d at 929. The Eighth Circuit determined that sentencing counsel's "representation . . . fell below an objective standard of reasonableness" when she failed to call the attorney who represented the petitioner in the assault case. *Id.* at 931. That lawyer had information substantiating that the petitioner "did not believe that [the victim] was a potential witness at the time of the murder" because he was aware of a plea agreement reached before the homicide that covered the assault charges. *Id.* at 926, 930. The Eighth Circuit found that habeas sentencing relief was appropriate because faced with a record confirming only one aggravating circumstance, "[t]he failure to call [the

petitioner's lawyer in the assault case] undermine[d] [its] confidence in the outcome of the sentencing proceeding." *Id.* at 930.

Even if *Parker* were binding on this Court, the Eighth Circuit's holding does not meet Mashburn's unreasonable application of *Strickland* burden for several reasons. Preliminarily, guilt-phase ineffectiveness is beyond *Parker*'s scope. Also, the sentencing balance for the petitioner in *Parker* was much closer than Mashburn's. The jury in *Parker* convicted the petitioner of one capital murder count and found one aggravating circumstance that supported the death penalty. The uncalled witness in *Parker* had specific information that directly undermined the sole aggravating factor that the jury found to support the petitioner's death sentence.

In contrast, after hearing evidence of his guilty pleas, the jury convicted Mashburn of five capital murder counts, including one crime independent from robbery or burglary—murdering two or more people in one act or scheme. (Doc. 30-2 at 83; *cf. Tejada v. Dugger*, 941 F.2d 1551, 1559-60 (11th Cir. 1991) (concluding that "the alleged errors, if true," were inadequate to establish *Strickland* guilt-phase prejudice "because the evidence against [the petitioner] [wa]s overwhelming")). Therefore, even accepting Mashburn's theory that the uncalled witnesses' testimony would have eliminated burglary and robbery as convictions and aggravating circumstances (doc. 24 at 12-13 ¶¶ 35-36), two other factors that the

State proved would remain—Mashburn's double murder of the Birminghams and the "especially heinous, atrocious or cruel [nature of that crime as] compared to other capital offenses" (doc. 30-29 at 62 ¶¶ 3-4).

Additionally, the ACCA pointed out that the witnesses whom trial counsel did not call during the guilt phase of Mashburn's trial allegedly had only equivocal information about Mrs. Birmingham's stolen jewelry. Consequently, unlike the uncalled lawyer in *Parker*, neither witness's alleged testimony would have established that "no jewelry was stolen during the murders." *Mashburn II*, 148 So. 3d at 1126. Therefore, Mashburn has not shown through *Parker* that the ACCA unreasonably affirmed the circuit court's dismissal of Mashburn's burglary and robbery *Strickland* subclaim for inadequate pleading.

### Alleged Ineffectiveness in Omitting Intoxication Defense

Mashburn supports his intoxication ineffectiveness subclaim A.2 with solely Alabama authorities. Quoting § 13A-3-2, Ala. Code 1975, Mashburn points out that voluntary or involuntary intoxication "'is admissible in evidence whenever it is relevant to negate an element of the offense charge.'" (Doc. 24 at 13 ¶ 38.) Quoting from commentary on § 13A-3-2, Ala. Code 1975, Mashburn observes similarly that "'drunkenness due to liquor or drugs may render defendant incapable of forming or

entertaining a specific intent or some particular mental element that is essential to the crime.'" (Doc. 24 at 13 ¶ 38.)

These Alabama intoxication principles do not undermine but instead are consistent with the ACCA's evaluation of this subclaim on appeal. The ACCA found an absence of adequate facts to show that intoxication was relevant to Mashburn's specific intent at the time of the murders. Given that factual gap, the ACCA concluded that Mashburn had no actionable *Strickland* claim based on trial counsel's failure to pursue an intoxication defense. Thus, Mashburn has not countered the ACCA's reasoning directly with these authorities, much less shown that AEDPA deference does not apply to the ACCA's affirmance of the collateral court's dismissal of this ineffectiveness subclaim.[17]

## Alleged Ineffectiveness in Omitting Self-Defense to Mr. Birmingham's Murder

Although Mashburn reasserts his self-defense *Strickland* subclaim A.3 in reply to Respondents' answer, he references no authorities and makes no arguments that substantiate why AEDPA's deference does not preclude him from basing habeas relief on these ineffectiveness allegations. (Doc. 40 at 11). Consistent with this

---

[17]     The Court notes that at the beginning of Claim A and in reply, Mashburn seeks habeas relief on the basis that his trial counsel were ineffective because they "did not investigate the effect of voluntary intoxication coupled with lack of sleep and the other impairment from which [he] suffers[.]" (Doc. 24 at 9 ¶ 22; Doc. 40 at 11.) Mashburn does not develop this allegation as a subclaim with Claim A. And the Court has explained in the abandoned section, *supra*, why he cannot obtain habeas relief based on this undeveloped allegation.

Court's abandonment discussion *supra*, to obtain habeas relief an AEDPA petitioner must do much more than simply raise (or restate) allegations which he believes reflect a valid constitutional claim. Instead, he must establish that one of § 2254(d)'s exceptions—reserved for correcting egregious state court constitutional error— applies. Because Mashburn has not satisfied his burden of demonstrating that the ACCA resolved this subclaim unreasonably under § 2254(d)(1), AEDPA precludes habeas relief.

<u>Alleged Ineffectiveness in the State's Introduction of</u>
<u>Cumulative and Prejudicial Photographs</u>

Mashburn cites several cases with respect to his photographic evidence ineffectiveness subclaim A.4. (Doc. 24 at 15-16 ¶¶ 49-50.) Although Mashburn does not identify this subclaim as one of the "Grounds Supporting . . . Relief" in his reply (doc. 40 at 10-11) (emphasis omitted), because he mentions cumulative and prejudicial photographs in the introduction (*id.* at 4), the Court considers whether the cases to which he refers within the petition satisfy § 2254(d)(1)'s unreasonable application standard.

Mashburn cites *Ott v. Smith*, 413 So. 2d 1129, 1132 (Ala. 1982), for "the rule in Alabama that the trial court may exclude evidence, even though it is relevant, when it would serve little or no purpose except to arouse the passion, prejudice, or sympathy of the jury." (Doc. 24 at 15 ¶ 49.) But the specific issue in *Ott* was whether

the trial court's exclusion of a witness's testimony was an abuse of discretion, 413 So. 2d at 1132; not whether overruling an objection to the admission of photographs as cumulative and prejudicial was an abuse of discretion. Additionally, as an Alabama evidentiary authority devoid of constitutional issues, *Ott* does not help Mashburn meet AEDPA's deferential unreasonable application standard.

Relying on the Eleventh Circuit's pre-AEDPA opinion in *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir. 1983), Mashburn argues that trial counsel's failure to object to cumulative and prejudicial photographs "infringed on [his] rights to due process and a fair trial under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution." (Doc. 24 at 15 ¶ 50.) The jury in *Osborne* convicted the petitioner of second-degree murder. 720 F.2d at 1238. The petitioner asserted a habeas claim based on trial counsel's overruled objection to the admission "of a number of gruesome photographs." *Id.* Specifically, the petitioner claimed that the admitted "evidence denied him a fundamentally fair trial in that the photographs inflamed the jury, creating prejudice against him in a case where the evidence was extremely close and based solely on circumstances which would not clearly identify petitioner as the culprit." *Id.* The district court denied the habeas claim as an unreviewable state evidentiary issue. *Id.* The Eleventh Circuit disagreed and remanded for the district court to consider "whether the trial

court's admission of the photographs constituted error of 'such magnitude as to deny fundamental fairness' to the petitioner." *Id.* at 1239 (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414–15 (5th Cir. Unit B 1982)); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 (1974) (recognizing "distinction between ordinary trial error . . . and that sort of egregious" error which infringes upon a defendant's constitutional right to a fair trial).

While the Eleventh Circuit decided that the admission of "gruesome photographs" over trial counsel's objection required additional review for constitutional fairness in *Osborne*, the other grounds underlying that concern are not present in Mashburn's *Strickland* allegations. As underscored by Mashburn's guilty pleas, the DNA evidence, and his confession to a cellmate, Mashburn's allegations do not reflect that his death penalty case "was extremely close and based solely on circumstances which would not clearly identify petitioner as the culprit." *Osborne*, 720 F.2d at 1238. Thus, Mashburn has not shown that habeas relief is available to him because the ACCA unreasonably resolved this *Strickland* subclaim based on *Osborne*.

Citing *Woodson v. North Carolina*, 428 U.S. 280 (1976) and *Gardner v. Florida*, 430 U.S. 349 (1977), Mashburn observes that "[e]specially in a capital case, cumulative and prejudicial videotapes and photographs create a grave risk that the

sentence of death will be imposed under the influence of passion, prejudice, or another arbitrary factor." (Doc. 24 at 15 ¶ 50.) At the pinpointed reference, the *Woodson* Court recognizes that "the penalty of death is qualitatively different from a sentence of imprisonment" and, as a result a "need [exists] for reliability in the determination that death is the appropriate punishment in a specific case." 428 U.S. at 305. But *Woodson*'s holding that "North Carolina's mandatory death sentence statute violated the Eighth and Fourteenth Amendments" is unrelated to cumulative and prejudicial evidence creating constitutionally unfair death penalty proceedings. *Id.* Akin to *Woodson*, the *Gardner* Court cautions that "the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action[,]" and emphasizes the consequential "importance to the defendant and to the community that any [death] . . . sentence be, and appear to be, based on reason rather than caprice or emotion." 430 U.S. at 357-58. Still, the holding in *Gardner* that a trial court's reliance on undisclosed portions of a presentence investigative report to impose a death sentence violated the Fourteenth Amendment's due process clause, 430 U.S. at 351, does not involve the constitutional impact of alleged cumulative and prejudicial evidence. Thus, Mashburn's reliance on *Woodson* and *Gardner* do not advance his position that the ACCA unreasonably applied Supreme Court precedent in affirming the dismissal of this subclaim for inadequate pleading.

As last support for this subclaim, Mashburn quotes from § 2254(d)'s three exceptions to the general prohibition against habeas relief cited in two cases—the independent prongs of a "contrary to" or "unreasonable application" of clearly established Supreme Court precedent under (d)(1) and an "unreasonable determination of the facts" under (d)(2). (Doc. 24 at 16 ¶ 50.) But Mashburn provides no factual or legal development of these cases, and their context reveals no correspondence to Mashburn's ineffectiveness subclaim based on the State's unchallenged introduction of cumulative and prejudicial photographs during the guilt phase. Specifically, one Eleventh Circuit decision addresses a *Batson* claim; not a constitutional unfairness or *Strickland* challenge. *See Bui v. Haley*, 321 F.3d 1304, 1315 (11th Cir. 2003) ("With nothing in the record—save Brooks's representations and argument—from which to find that Brooks was in fact presenting Evans's reasons (for excusing eight black jurors), we find the trial judge's contrary finding an 'unreasonable determination of the facts.'" (quoting 28 U.S.C. § 2254(d)(2))).

The Supreme Court's opinion in *Williams*—which, as discussed *supra*, involves a *Strickland* claim based on counsel's deficient handling of the petitioner's mitigation case—is Mashburn's second reference. *See Williams*, 529 U.S. at 412-13 (O'Connor, J., majority opinion with respect to part II) (discussing AEDPA's restraints on a federal court's ability to award habeas relief); *id.* at 399 (reversing

*Strickland* mitigation claim under AEDPA because "viewed as a whole and cumulative of mitigation evidence presented originally, raised 'a reasonable probability that the result of the sentencing proceeding would have been different' if competent counsel had presented and explained the significance of all the available evidence.").[18] The Supreme Court did not evaluate alleged guilt-phase deficient performance or a claim that cumulative and prejudicial evidence rendered the death

---

[18]    The *Williams* Court described the complete body of mitigating evidence—omitted and introduced:

> Counsel failed to introduce available evidence that Williams was "borderline mentally retarded" and did not advance beyond sixth grade in school. They failed to seek prison records recording Williams' commendations for helping to crack a prison drug ring and for returning a guard's missing wallet, or the testimony of prison officials who described Williams as among the inmates "least likely to act in a violent, dangerous or provocative way." Counsel failed even to return the phone call of a certified public accountant who had offered to testify that he had visited Williams frequently when Williams was incarcerated as part of a prison ministry program, that Williams "seemed to thrive in a more regimented and structured environment," and that Williams was proud of the carpentry degree he earned while in prison. . . .

> Williams turned himself in, alerting police to a crime they otherwise would never have discovered, expressing remorse for his actions, and cooperating with the police after that. While this, coupled with the prison records and guard testimony, may not have overcome a finding of future dangerousness, the graphic description of Williams' childhood, filled with abuse and privation, or the reality that he was "borderline mentally retarded," might well have influenced the jury's appraisal of his moral culpability. *See Boyde v. California*, 494 U.S. 370, 387, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

*Williams*, 529 U.S. at 396, 398 (some citations omitted).

proceedings fundamentally unfair in *Williams*. Thus, *Bui* and *Williams* do not help Mashburn meet his AEDPA burden on this *Strickland* subclaim.

Alternatively, because Mashburn challenges the ACCA's decision as an unreasonable factual determination under § 2254(d)(2),[19] and in the absence of the ACCA's discussing why the unchallenged photographic evidence allegations fell short of raising a constitutional question about fairness,[20] the Court considers to what extent this *Strickland* subclaim may be cognizable under de novo review. The Court accepts for analysis purposes that Mashburn's allegations that trial counsel did not object to "the prosecution's present[ation] [of] forty-nine . . . graphic crime scene photographs, including thirteen . . . color photographs of Mr. Birmingham's . . . and . . . Mrs. Birmingham's dead and bloodied bod[ies]" (doc. 24 at 14 ¶ 45) or to thirty-six photographs from the autopsies, "including seven . . . close-up

---

[19]    As summarized *supra*, the ACCA stated that Mashburn's allegations were inadequate under *Strickland*'s deficient performance prong because he did not identify an objection that trial counsel should have raised or explain why the photographs were inadmissible. Mashburn alleges that trial counsel should have objected to the introduction of the photographs as "overwhelmingly cumulative" and "extremely prejudicial[.]" (Doc. 24 at 15 ¶ 47.) Accepting without deciding that § 2254(d)(2) opens the door to habeas review of this subclaim, the Court provides an alternative basis that supports dismissal.

[20]    Because neither the ACCA nor the circuit court conducted a constitutional assessment of the cumulative and prejudicial photographs subclaim, AEDPA's contrary to prong arguably applies. *See Romine*, 253 F.3d  at 1365 ("Failure to apply that governing law (or the same rule in state law) is tantamount to applying a rule that contradicts governing law, for these purposes."); *id.* ("In other words, when there is grave doubt about whether the state court applied the correct rule of governing federal law, § 2254(d)(1) does not apply.").

photographs . . . [of] stab wounds to Mr. Birmingham's head and neck and six . . . [of] stab wounds to Mrs. Birmingham's head[,]" (doc. 24 at 15 ¶ 46) or ninety other photographs (*id.*) are sufficient to state deficient performance under *Strickland* as conflicting with Mashburn's right to a fundamentally fair trial.[21] Still, Mashburn cannot obtain habeas relief because the prejudice prong fails under AEDPA. Unlike the petitioner in *Osborne*, *supra*, Mashburn lacks supporting facts that the cumulative and prejudicial photographs undermine confidence in the jury's guilt and sentence verdicts. Stated differently, accepting that trial counsel would have been able to limit the number of graphic photographs introduced at trial is inadequate to create a reasonable probability of altering the guilty verdict or death penalty outcome under the circumstances of Mashburn's case.

With respect to his convictions, Mashburn pled guilty to five capital crimes tied to the murders of his grandmother and step-grandfather. Forensic evidence retrieved from the crime scene matched Mashburn's DNA and while in custody Mashburn confessed to a cellmate that he had murdered the Birminghams. The ACCA and this Court have determined *supra* that the trial court's plea hearing refutes Mashburn's attempt to invalidate his guilty pleas based on *Boykin*.

---

[21]    To what extent Mashburn's trial counsel would have been successful in limiting the photographic evidence introduced during the guilt-phase is debatable given the State's strategy of submitting a special verdict to the jury on the atrociousness of Mashburn's crimes.

Additionally, Mashburn does not raise constitutional challenges to the DNA evidence or confession which support the jury's guilty-phase verdict. Similarly, the jury returned an eleven to one death-sentence verdict after the penalty-phase proceeding. Even if the alleged cumulative and prejudicial photographs were the source of the jury's special verdict finding that Mashburn committed atrocious crimes, three other aggravating factors supported the jury's recommended death sentence. Although de novo review of the prejudice prong does not require factual allegations that would satisfy a preponderance of the evidence standard, *Strickland*'s reasonable probability test requires more than a theoretical possibility of changing an adverse sentencing outcome, which Mashburn has not met.

Thus, Mashburn has not shown that the unreasonable application clause applies to the ACCA's rejection of this subclaim for insufficient pleading. Alternatively, Mashburn lacks adequate facts to support *Strickland* prejudice regardless of whether he has stated a cognizable prong of deficient performance.

Alleged Ineffectiveness in Omitting Venue Challenge

In his venue subclaim A.5, Mashburn refers generally to the Supreme Court's guidance in *Strickland* that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." (Doc. 24 at 17 ¶ 58;

*Strickland*, 466 U.S. at 690). *Strickland* does not involve ineffectiveness premised on venue, and Mashburn references no other supporting authorities. Thus, Mashburn has not shown an unreasonable application of Supreme Court precedent to override AEDPA's deference to the ACCA's decision on this subclaim.

### Alleged Ineffective Advice on Right to Withdraw Guilty Pleas

Although Mashburn offers two Alabama authorities in an effort to show trial counsel's ineffectiveness in advising him that he had no right to withdraw a guilty plea as alleged in subclaim A.7 (doc. 24 at 17-18 ¶ 60), neither establishes a right to habeas relief under AEDPA. Mashburn refers to Alabama Criminal Procedure Rule 14.4(e) which requires a trial court to "allow withdrawal of a plea of guilty when necessary to correct a manifest injustice." Ala. R. Crim. P. 14.4(e). Mashburn relies also on *Dooley v. State*, 26 So. 3d 499 (Ala. Crim. App. 2009), in which the ACCA remanded the criminal case for the defendant to "have the opportunity to withdraw his guilty plea and to enter another plea after he has been informed of the correct sentencing range[.]" *Id.* at 504. These Alabama authorities confirm that a defendant may seek to withdraw a guilty plea. But neither demonstrates that ACCA unreasonably applied Supreme Court precedent in affirming the dismissal of this subclaim.

For analysis purposes, the Court accepts that misinforming a defendant about his right to withdraw a guilty plea under state law might support a constitutional claim under certain circumstances.[22] Still, Mashburn has not shown that the ACCA unreasonably rejected these allegations as inadequate because Mashburn did not state when the conversation with trial counsel occurred. Specifically, depending on when that alleged discussion took place, trial counsel may have given Mashburn appropriate guidance under Alabama law. *See, e.g., Dooley*, 26 So. 2d at 500-01 (explaining that "mo[ving] to withdraw a guilty plea . . . more than 30 days after the date that sentence pronounced [is] untimely) (citing Ala. R. Crim. P. 24.1; *Allen v. State*, 883 So. 2d 737, 738 n.1 (Ala. Crim. App. 2003)). Consequently, Mashburn has not shown an unreasonable application of Supreme Court precedent, and AEDPA deference forecloses Mashburn from habeas relief on this subclaim.

## C.    Alleged Penalty-Phase Ineffective Assistance

Mashburn alleges in Claim B that his trial counsel provided ineffective penalty-phase assistance. (Doc. 24 at 18.) Mashburn divides Claim B into five *Strickland* subclaims. (Doc. 24 at 19, 21, 27, 32, 36.) Mashburn asserts in B.1 that trial counsel "did not take reasonable steps to provide [him] with an adequate mitigation

---

[22]    Mashburn has not identified a Supreme Court holding that recognizes a *Strickland* claim premised upon counsel's misinforming a defendant about his right to withdraw a guilty plea under state law.

investigation and presentation." (Doc. 24 at 19) (emphasis omitted). Mashburn alleges in B.2 that trial counsel "did not investigate or prepare [his] defense for two years after they were assigned the case." (Doc. 24 at 21) (emphasis omitted). Mashburn maintains in B.3 and B.4 that trial counsel hired private investigators and mitigation specialists without assessing their credentials, credibility, or professionalism or supervising them adequately. (Doc. 24 at 27, 32.)   Finally, Mashburn argues in B.5 that trial counsel performed ineffectively because they did not advocate ending his psychotropic drug treatment before trial. (Doc. 24 at 36.)

Respondents divide Claim B into three ineffective assistance subclaims—trial counsel presented an "'incomplete'" mitigation case due to inadequate investigation and supervision (doc. 32 at 51 ¶ 32; *see also* doc. 24 at 20 ¶ 69), failed to argue that Mashburn should have been "'weaned off'" his psychiatric medication before trial (doc. 32 at 69 ¶ 33), and permitted Mashburn to plead guilty without a deal in place even though Mashburn's medication affected his ability to make that decision (doc. 32 at 75 ¶ 34). Mashburn does not challenge Respondents' grouping of these *Strickland* subclaims in reply. (Doc. 40 at 10-15.) Respondents answer the first two subclaims similarly—habeas relief is inappropriate because Mashburn has not met his burden under § 2254(d)'s deferential review, § 2254(e)(1)'s presumption of correct state court factual findings, § 2254(e)(2)'s evidentiary

hearing framework, or Rule 2(c)'s heightened pleading framework. (Doc. 32 at 66-69 ¶ 32; *id.* at 72-74 ¶ 33.) With regard to the third subclaim, Respondents contend that Mashburn has procedurally defaulted on this subclaim because he did not fairly present it in state court. (Doc. 32 at 75-76 ¶ 34(a).) Respondents argue alternatively that this one-sentence allegation does not state a cognizable constitutional claim or warrant an evidentiary hearing under § 2254(e)(2). (Doc. 32 at 76-77 ¶ 34(b)-(c).)

State court exhaustion is a prerequisite to obtaining § 2254 relief. 28 U.S.C. § 2254(b)(1)(A). Consequently, the Court examines that preliminary inquiry and considers that doctrine's interplay with Respondents' procedural default defense to Mashburn's guilty plea-medication subclaim first.

### 1. Unexhausted Guilty Plea *Strickland* Subclaim

For the most part, Mashburn's Rule 32 and § 2254 petitions contain the same *Strickland* penalty-phase allegations and claims. Consequently, Mashburn has exhausted Claim B's subclaims one through four (totaling 75 allegations) and nearly all of subclaim five (equaling 15 allegations). (*Compare* Doc. 24 at 18-39 ¶¶ 61-150, *with* Doc. 30-23 at 48-60 ¶¶ 80-132, *and* Doc. 30-24 at 1-9 ¶¶ 132-169.) But as Respondents point out, the following allegation placed at the end of Mashburn's habeas subclaim B.5 is missing from his Rule 32 petition: "The prescription psychotropic drugs Mr. Mashburn was taking at the time also affected his ability to

determine whether he should plead guilty to capital murder with no deal in exchange for the guilty plea." (Doc. 24 at 39 ¶ 151.) This unexhausted allegation is likewise missing from Mashburn's Rule 32 guilt-phase *Strickland* claims. (*See* Doc. 30-23 at 39-48 ¶¶ 41-79) (alleging robbery and burglary, intoxication, self-defense, photograph, venue, lack of defense, change of guilty plea Rule 32 subclaims). Thus, Mashburn did not fairly present this *Strickland* subclaim in state court.

Respondents argue that a dismissal to exhaust the subclaim would be futile because Alabama Criminal Procedure Rule 32.2(b) and (c) foreclose Mashburn from securing relief in state court. (Doc. 32 at 75 ¶ 34(a)). Rule 32.2(b) prohibits awarding a petitioner "relief on a successive petition on the same or similar grounds" without exception or different grounds unless one of two exceptions applies. Ala. R. Crim. Proc. 32.2(b).[23] Additionally, a petitioner must initiate a collateral proceeding within one year from the certificate of judgment on appeal to avoid a time-bar dismissal under Rule 32.2(c). Ala. R. Crim. Proc. 32.2(c)(1).

---

[23]    Additionally, Rule 32.2(d) bars a petitioner from raising a *Strickland* claim in a successive petition regardless of whether the ground is old or new:

> Any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable. In no event can relief be granted on a claim of ineffective assistance of trial or appellate counsel raised in a successive petition.

Ala. R. Crim. Proc. 32.2(d).

In reply, Mashburn maintains that "[h]ad trial counsel provided effective representation, there is a reasonable probability that the outcome of Mr. Mashburn's trial would have been different."[24] (Doc. 40 at 14; *see also id.* at 11-12.) But Mashburn does not dispute Respondents' procedural default analysis or invoke an exception. (Doc. 40 at 2, 10-15.) Specifically, Mashburn does not challenge Rule 32.2(b)'s or (c)'s regularly followed and firmly established status under Alabama law. Nor does Mashburn suggest that his actual innocence establishes "a gateway . . . to have his otherwise barred constitutional clam considered on the merits." *Schlup*, 513 U.S. at 315 (internal quotation marks omitted) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The cause and prejudice exception cannot save Mashburn's defaulted subclaim either. When post-conviction counsel omits a trial counsel *Strickland* claim,

> a prisoner may establish cause for the default of a claim of ineffective assistance of trial counsel by showing that: (1) post-conviction counsel was ineffective under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and (2) the defaulted claim is a "substantial one," which means that the prisoner must show that "the claim has some merit." *Martinez*, 566 U.S. at 14, 132 S.Ct. 1309.

---

[24]     Mashburn appears to have included this language to meet *Strickland*'s prong with respect to his trial counsel's conduct during the guilty and penalty phases. As a refresher, the prejudice component of *Strickland* comes in two forms depending on whether the alleged ineffectiveness occurred during the guilt or penalty phase. The more specific test for mitigation-phase prejudice is whether "a reasonable probability [exists] that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Stewart*, 476 F.3d at 1209 (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 695).

*Duffy v. Sec'y, Dep't of Corr.*, 729 F. App'x 669, 670 (11th Cir. 2018). "A defaulted claim is substantial if the resolution of its merits would be debatable among jurists of reason." *Id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). Mashburn does not argue that his post-conviction counsel violated *Strickland* when they omitted the guilty plea-medication allegation during the Rule 32 process and does not seek equitable relief under the *Martinez* rule for that Rule 32 omission. As a result, Mashburn cannot show that the merits of his defaulted trial counsel claim are reasonably debatable. Thus, as Mashburn invokes no exception to procedural default and additionally lacks cause for excusing the default, a procedural dismissal of this unexhausted allegation is appropriate.

Alternatively, Mashburn's ambiguous allegation that his prescribed medication affected his decision making about the guilty plea, does not support a cognizable *Strickland* claim under § 2254's heightened pleading standard. As the Supreme Court has explained, pleading an adequate habeas claim demands more from a petitioner than stating a claim in "ordinary civil proceedings[.]" *Mayle*, 545 U.S. at 655; *see also id.* (quoting Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 (" '[N]otice' pleading is not sufficient, for the petition[er] is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted))). Thus, a petitioner who simply identifies a

constitutional theory but excludes a corresponding factual foundation fails to state a cognizable habeas claim.

Critical to a viable *Strickland* claim are factual allegations that support Sixth Amendment ineffectiveness of counsel—objectively unreasonable representation. To meet this exacting standard, a petitioner must assert more than alleged ordinary flaws in the legal representation he received. Instead, a petitioner must assert "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

With these principles in mind, the Court considers the context of Mashburn's guilty plea-medication allegation. Mashburn claims that, despite the State's strong case of guilt against him, including corroborating DNA evidence and a confession, trial counsel acted unreasonably in using his acceptance of guilt as a mitigating factor during sentencing because his medication affected his ability to decide whether to enter a plea. Respondents contend that "to the extent that Mashburn is attempting to raise any challenge to the voluntariness of his guilty plea, the claim fails to state a valid claim for relief under 28 U.S.C. § 2254." (Doc. 32 at 76 ¶ 34(b)).

As this Court discussed *supra*, Mashburn does attempt to challenge his guilty pleas as involuntary under *Boykin*. But Mashburn does not allege that his medicated state prevented him from "voluntarily and understandingly" waiving his *Boykin*

rights without a deal in place. *Boykin*, 395 U.S. at 244 (internal quotation marks omitted). Moreover, the state court record of the colloquy confirms the voluntariness of Mashburn's plea despite his medicated state. Specifically, when the trial court asked Mashburn whether taking Elavil, Valium, and Inderal prevented him from understanding the "consequences" and "seriousness" of pleading guilty, Mashburn responded, "No, Your Honor."[25] (Doc. 30-6 at 103.) Additionally, Mashburn affirmed that pleading guilty was his decision. (Doc. 30-6 at 111.)

Mashburn does not argue that the record, minus his pleas, reflects equivocal evidence of his guilt. Mashburn does not contend that the prosecutor ever considered offering him a deal or otherwise describe why his counsel acted objectively unreasonable under the circumstances of the State's compelling case establishing his guilt. Consequently, Mashburn lacks the required detail for actionable deficient performance under *Strickland*.

Alternatively, accepting that Mashburn has stated the first prong sufficiently, his subclaim fails to meet *Strickland*'s prejudice prong. To satisfy prejudice based on

---

[25]    Elavil or amitriptyline "is used to treat mental/mood problems such as depression." https://www.webmd.com/drugs/2/drug-1807/elavil-oral/details (last visited Dec. 21, 2020).

Valium or "[d]iazepam is used to treat anxiety, alcohol withdrawal, and seizures." https://www.webmd.com/drugs/2/drug-11116/valium-oral/details (last visited Dec. 21, 2020).

Inderal or propranolol is a beta-blocker which has an "off-label use . . . [of] help[ing] [to] mange[e] anxiety symptoms." https://www.healthline.com/health/beta-blockers-for-anxiety (last visited Dec. 21, 2020).

ineffective assistance with a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Because Mashburn does not allege that, unmedicated, his decision would have been different about pleading guilty, he has failed to allege actionable prejudice.

Thus, the Court dismisses Mashburn's unexhausted guilty-plea allegation within subclaim B.5 for procedural and substantive reasons.

### 2.    Mashburn's Exhausted *Strickland* Subclaims

The Court turns now to Mashburn's exhausted Claim B allegations, including subclaims B.1 to B.4, and the remainder of B.5. (Doc. 24 at 19-39 ¶¶ 61-150.) Accepting these *Strickland* allegations as true, the state collateral court dismissed them for insufficiency under Rules 32.3, 32.6(b) and referenced 32.7(d) on some claims.[26] (*See* Doc. 30-29 at 94) (dismissing mitigation evidence allegations reasserted in subclaim B.1); (*id.* at 30-29 at 96) (dismissing delay allegations reasserted in subclaim B.2); (*id.* at 97) (dismissing anoxic birth allegations reasserted in subclaim B.2); (*id.* at 98, 100, 102) (dismissing expert credentials allegations

---

[26]    The Court described Alabama Criminal Procedure Rules 32.3 and 32.6(b) when analyzing Mashburn's guilt-phase *Strickland* subclaims *supra* and explained that a Rule 32.6(b) dismissal is subject to AEDPA deferential review. Under Rule 32.7(d), a state court may dismiss a petition that "is not sufficiently specific, or is precluded, or fails to state a claim, or . . . [is without a] material issue of fact or law . . . which would entitle the petitioner to relief . . . and . . . no purpose would be served by any further proceedings[.]" Ala. R. Crim. P. 32.7(d).

reasserted in subclaim B.3); (*id.* at 103) (dismissing supervisory allegations reasserted in subclaim B.4; (*id.* at 104) (dismissing prescribed medication allegations reasserted in subclaim B.5).

The ACCA affirmed the Rule 32 court's summary dismissal of these *Strickland* subclaims without an evidentiary hearing. *See Mashburn II*, 148 So. 3d at 1107 (stating that "[t]he circuit court properly applied the well[-]recognized and heavy burden of pleading" and that the 65-page order "contains specific written findings regarding the pleading deficiencies of each of Mashburn's ineffective-assistance-of-counsel claims"); *see also id.* at 1134 ("As it relates to counsel's handling of private investigators, this claim was not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b)."); *id.* at 1140 (affirming circuit court's summary dismissal of Mashburn's allegations that "his counsel were ineffective because of their delay in hiring, their alleged failure to verify the credentials of, and their alleged failure to supervise the investigation by, the mitigation specialists"); *id.* ("[S]ummary dismissal of this claim of ineffective assistance of counsel as it relates to mitigation specialists was proper."); *id.* at 1143 ("Mashburn failed to plead sufficient facts to indicate that his counsel were ineffective for not adequately advocating that he be weaned off his medications before trial[.]").

The ACCA considered the trial court's specific mitigating and aggravating findings, which sentencing factors this Court included in the procedural history *supra*. *Mashburn II*, 148 So. 3d at 1131-32. The ACCA considered that "13 witnesses . . . testif[ied] on [Mashburn's] behalf at the penalty phase of the trial, including neuropsychologist Dr. Robert Shaffer and neuropsychiatrist Dr. Thomas Sachy." *Id.* at 1132. The ACCA noted that "the penalty phase of the trial lasted five days . . . and that trial counsel's presentation of mitigating evidence encompassed over 700 pages of transcript." *Id.*

Against this backdrop, the Court considers whether Mashburn has demonstrated a right to habeas relief based on his mitigation subclaims.

### a.      Alleged Incomplete Mitigation Case

Mashburn contends generally in subclaims B.1 through B.4 that trial counsel committed numerous investigatory and supervisory errors that resulted in an incomplete mitigation case. Rather than following Mashburn's division of claims, the ACCA "f[ound] it more apt" to analyze Mashburn's allegations "first as [they] applie[d] to counsel's private investigators and then as [they] applie[d] to counsel's mitigation specialists." *Mashburn II*, 148 So. 3d at 1133. To facilitate review, this Court follows the ACCA's approach.

In evaluating whether Mashburn stated a sufficient *Strickland* subclaim with respect to private investigation, the ACCA acknowledged several allegations that suggested deficient representation. *Mashburn II*, 148 So. 3d at 1134-35. For example, Mashburn maintained that counsel waited two years before requesting funds to hire an investigator and another five months before hiring a replacement after discovering that the first investigator had falsified his credentials. *Id.* at 1133-34. Mashburn asserted that counsel met only once with and did not verify the credentials of the replacement investigator (beyond obtaining a resume) or the investigator's associate. *Id.* at 1134. Mashburn maintained that trial counsel's failure to supervise or replace an associate investigator prejudiced his defense because she lacked persistency; experienced "difficulty in getting witnesses to speak with her[,]" including a pawnshop owner connected to the recovered stolen jewelry; delayed following up with recalcitrant witnesses; and ended her investigation as "futile" once the DNA evidence implicated Mashburn. *Id.*

Consistent with these alleged penalty-phase facts, the ACCA found that "Mashburn identified the acts or omissions of counsel that he believed constituted deficient performance[.]" *Mashburn II*, 148 So. 3d at 1134-35. But the ACCA determined that Mashburn did not assert "any facts indicating that he was prejudiced by counsel's performance as it relates to private investigators." *Id.* at

1135. The ACCA observed that an investigatory delay alone was insufficient to established prejudice. *Id.* Instead, the ACCA reasoned that Mashburn should have "identif[ied] within this claim any evidence, information, or witness that could have been, but was not, discovered as a result of the delay." *Id.*

As for challenging the replacement investigator's credentials and techniques under *Strickland*, the ACCA pointed out that Mashburn provided no identifying information about witnesses whom the investigator did not interview except for generally mentioning a pawnshop owner. *Mashburn II*, 148 So. 3d at 1135. The ACCA found other pleading problems including Mashburn's failure to detail what information the unidentified witnesses and pawnshop owner knew that "would have been helpful to his mitigation case." *Id.* The ACCA concluded that Mashburn's allegations that counsel should have instructed the replacement investigator to continue working despite "the DNA evidence implicat[ing] [him] in the crimes" lacked sufficiency because Mashburn did not describe what "would have been discovered . . . had she continued her investigation." *Id.* Thus, the ACCA determined that Mashburn's facts about counsel's "delay in hiring, their alleged failure to verify the credentials of, and their alleged failure to supervise the investigation by, the private investigators" were insufficient to support a *Strickland* mitigation claim. *Id.*

The ACCA concluded likewise that Mashburn's "lengthy" allegations about mitigation specialist *Strickland* errors lacked prejudicial sufficiency. *Id.* at 1138. The ACCA credited Mashburn for identifying areas in which he believed counsel performed deficiently, including "counsel's two-year delay in hiring a mitigation specialist[], counsel's alleged failure to verify the credentials of the three mitigation specialists they hired, and counsel's alleged failure to supervise the mitigation investigation or conduct their own independent mitigation investigation." *Id.* But the ACCA found that "with the exception of his pediatric medical records . . . , Mashburn failed to identify within this claim . . . any information or any evidence that could have been, but was not, discovered" or witnesses "who could have testified on his behalf[,]" but whom counsel overlooked due to a "'rushed and incomplete'" investigation. *Id.* at 1138.

Concerning the discovery that Mashburn's third mitigation specialist "was not a licensed clinical social worker[,]" the ACCA determined that offering "only a bare allegation" of impeachment failed to establish *Strickland* prejudice. *Id.* at 1138-39. Instead, Mashburn should have included "*facts*" linking an absence of "impeach[ment] in this manner" to a reasonable probability "that the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 1139 (emphasis in original).

With respect to his pediatric medical records—documenting a C-section birth without the complication of anoxia (doc. 30-29 at 98 ¶ 26; *Mashburn II*, 148 So. 3d at 1118)—Mashburn alleged ineffectiveness because the State used that natal information to impeach his neuropsychological and neuropsychiatric experts, Drs. Shaffer and Sachy, who "'used the possibility of an anoxic birth to inform their diagnoses of Mr. Mashburn[.]'" *Id.* at 1118, 1139. Drs. Shaffer and Sachy based their opinions of possible anoxia given the combination of Mashburn's mother having a C-section and Mashburn's being "in a "'breach position during childbirth.'" (Doc. 30-29 at 97-98 ¶ 26.) Mashburn claimed "that had counsel obtained the [birth] records 'there is a reasonable possibility the expert witnesses would have been credible and Mr. Mashburn would have received a life sentence.'" *Id.* at 1139. The ACCA found that Mashburn's credibility and life sentence statements were "conclusion[s], not . . . assertion[s] of fact[,]" and insufficiently "specific to satisfy the pleading requirements for the prejudice prong of the *Strickland* test." *Id.*

The ACCA found that Mashburn's ineffectiveness allegations about "last minute" witnesses were inadequate because he did not state who they were, "what those witnesses' testimony was[,]" or the manner and testimonial impact of the State's impeachment of one witness. *Id.* at 1139. Again, the ACCA determined that to allege *Strickland* prejudice adequately, Mashburn should have asserted facts

showing that the jury would have balanced the sentencing factors differently "had these two witnesses not been called to testify at the last minute[.]" *Id.*

Regarding ineffectiveness tied to the expert evaluations that occurred one "month before trial," the ACCA found that "Mashburn made only a bare and conclusory allegation" that the delay resulted in "'incomplete, uncoordinated, and rushed'" medical assessments. *Id.* To state an adequate claim, Mashburn should have alleged what the experts determined pretrial, "what specifically they testified to at trial, what part of the evaluations were 'incomplete,' or, most importantly, what Dr. Shaffer and Dr. Sachy would have testified to had they had additional time in which to evaluate Mashburn." *Id.*

Citing several state and federal authorities, the ACCA ended its analysis of Mashburn's mitigation specialist allegations with the conclusion that Mashburn could not base a *Strickland* claim on "counsel's hiring other people to conduct the mitigation investigation instead of conducting the investigation themselves." *Mashburn II*, 148 So. 3d at 1140; *see Walls v. Bowersox*, 151 F.3d 827, 834 n.4 (8th Cir. 1998) ("[I]t is neither unprofessional nor unreasonable for a lawyer to use surrogates to investigate and interview potential witnesses rather than doing so personally." (citing *Harris v. Dugger*, 874 F.2d 756, 762 & n.8 (11th Cir. 1989))).

In seeking habeas relief on these penalty-phase allegations, Mashburn acknowledges AEDPA's framework generally. (Doc. 40 at 8-9.) Mashburn cites several cases that discuss *Strickland*—*Brownlee v. Haley*, 306 F.3d 1043 (11th Cir. 2002) (doc. 24 at 18 ¶ 61; doc. 40 at 14); *Porter v. Singletary*, 14 F.3d 554 (11th Cir. 1994) (doc. 24 at 18 ¶ 61; doc. 40 at 14); *Baxter v. Thomas*, 45 F.3d 1501 (11th Cir. 1995) (doc. 24 at 18 ¶ 61; doc. 40 at 14); *Harris v. Dugger*, *supra*, (doc. 24 at 18 ¶ 61; doc. 40 at 14); *Middleton v. Dugger*, 849 F.2d 491 (11th Cir. 1988) (doc. 24 at 18 ¶ 61; doc. 40 at 14); *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994) (doc. 24 at 19 ¶ 63); *Thompson v. Wainwright*, *supra*, (doc. 24 at 21 ¶ 72; *id.* at 31 ¶ 117; doc. 40 at 14-15); *Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002) (doc. 24 at 35-36 ¶ 135); and *Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir. 1994) (doc. 24 at 36 ¶ 135). Mashburn relies also on the Supreme Court's pre-*Strickland* decision in *Lockett v. Ohio*, 438 U.S. 586 (1978). (Doc. 24 at 18 ¶ 61; Doc. 40 at 14.) But in citing these cases, Mashburn does not state which provisions of § 2254(d) this Court should apply—(d)(1), (d)(2), or both. (*See generally* Doc. 24 at 18-36 ¶¶ 61-135; Doc. 40 at 13-15.)

As explained in the standards of review section *supra*, a petitioner may obtain habeas relief under § 2554(d)(2) if a state court denied the claim "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). During collateral review, Mashburn did

not submit evidence with his Rule 32 petition or receive a hearing. In contesting the ACCA's decision on federal habeas review, Mashburn has not identified portions of the state court evidentiary record which he contends undermine the summary dismissal of these *Strickland* claims. (*See generally* Doc. 24 at 18-36 ¶¶ 61-135; Doc. 40 at 13-15.) Consequently, the Court understands that Mashburn seeks habeas relief under § 2254(d)(1) only.

Here, the ACCA correctly invoked the *Strickland* framework when evaluating the sufficiency of Mashburn's ineffective assistance allegations. Thus, § 2254(d)(1)'s contrary-to prong plays no role in the AEDPA analysis. Instead, the "sole" standard is whether the ACCA unreasonably applied Supreme Court precedent in rejecting Mashburn's penalty-phase *Strickland* subclaims. *See Shinn v. Kayer*, ____ U.S. ____, 141 S. Ct. 517, 523 (2020) (applying (d)(1)'s unreasonable application standard because "the state court applied 'the correct governing legal principle ... to the facts of the prisoner's case'" (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

Still, simply citing ineffective-assistance-of-counsel cases, which Mashburn contends cast doubt on the validity of his state court *Strickland* outcome, does not satisfy § 2254(d)(1)'s demanding unreasonable application test. Instead, Mashburn must persuade this Court that these authorities establish that the ACCA's decision

upholding the circuit court's pleading-based dismissal of his *Strickland* mitigation allegations was "so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn*, 141 S. Ct. at 526 (quoting *Richter*, 562 U.S. at 103). After carefully considering Mashburn's authorities as developed more *infra*, AEDPA precludes habeas relief because he has not shown an objectively unreasonable state court decision.

*Lockett* is the only Supreme Court decision that Mashburn cites in Claim B besides *Strickland*. Given the grave stakes that a capital case presents, the Supreme Court decided in *Lockett* that the constitution recognizes a capital defendant's right to an individualized penalty-phase assessment. *Lockett*, 438 U.S. at 604. Consequently, a "sentencer . . . [normally should] not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* (footnote omitted) (emphasis in original). But the Eighth and Fourteenth Amendments provide the constitutional foundation for the *Lockett* doctrine; not the Sixth Amendment. *Id.* And while *Lockett* may shine light on the merits of a *Strickland* claim, *see Brownlee*, 306 F.3d at 1070-71 (linking the *Lockett* doctrine to *Strickland* prejudice), ineffective assistance is beyond *Lockett*'s holding. Consequently, Mashburn's reliance on *Lockett* is inadequate to establish an

objectively unreasonable application of *Strickland*. *See Williams*, 529 U.S. at 412 (explaining that only Supreme Court holdings effective at the time of the challenged state court decision constitute clearly established federal law under § 2254(d)(1)).

Mashburn's remaining cases are from the Eleventh, Fifth, and Ninth Circuits. Consequently, none constitute clearly established law under § 2254(d)(1) either. Additionally, except for *Neal*, the authorities do not involve deferential habeas review because the § 2254 proceedings began before AEDPA's April 24, 1996 effective date. *Brownlee*, 306 F.3d at 1058. Regardless of their pre- or post-AEDPA status, Mashburn offers little insight why he believes these decisions show that, in affirming the circuit court's Rule 32 dismissal, the ACCA applied *Strickland* or its progeny unreasonably. The Court turns now to a contextual consideration of these cases in light of Mashburn's requested resentencing based on his private investigator and mitigation specialist allegations—subclaims B.1 – B.4.

Mashburn refers to *Brownlee*, *Porter*, *Baxter*, *Harris*, and *Middleton* in the introductory section to Claim B and in reply. The Court summarizes each case before comparing them to the ACCA's dismissal of Mashburn's *Strickland* mitigation subclaims for pleading deficiencies.

The state charged the petitioner in *Brownlee* and two other persons with murder of a bar owner during the course of a robbery. 306 F.3d at 1046. The

petitioner "did not testify and the defense offered no evidence" during the guilt phase. 306 F.3d at 1049. After a guilty verdict, the state presented two aggravating circumstances, and the petitioner introduced no mitigation evidence. *Id.* at 1051. The Alabama jury "recommend[ed] a sentence of death by an 11-1 vote." *Id.* at 1052. After exhausting the state review process, the petitioner sought federal habeas relief on several grounds including counsel's ineffective investigation of his guilt and mitigation. *Id.* at 1057. Finding that the record lacked evidence to support a *Strickland* guilt claim and that counsel performed deficiently but not prejudicially during the penalty phase, the district court denied both claims. *Id.* at 1057-58. The petitioner appealed on several grounds including the denial of guilt- and penalty-phase ineffectiveness. *Id.* at 1058.

Rejecting the guilt-phase investigation claim, the Eleventh Circuit pointed out that counsel "had complete access to all of the State's evidence and investigative materials as a result of the district attorney's office's 'open file' discovery policy." *Id.* at 1060. Additionally, the petitioner had "not identif[ied] any information that counsel would have obtained if they had conducted more pre-trial discovery." *Id.* In sum, "[c]ounsel's decision to rely on the extensive material made available by the district attorney's office did not fall outside the wide range of professional

competence, and Brownlee's failure to demonstrate that further discovery would have helped the defense clearly bar[red] a finding of prejudice." *Id.*

The Eleventh Circuit reached a different conclusion concerning mitigation and held that the petitioner "plainly received ineffective assistance of counsel at sentencing in light of his attorneys' failure to investigate, obtain, or present to the jury *any* evidence in mitigation of the death penalty, violating the Sixth Amendment to the Constitution." 306 F.3d at 1045 (emphasis in original); *see also id.* at 1067. Specifically, counsel did not investigate or present "evidence of Brownlee's background and character[,]" *id.* at 1069, including "the powerful mitigating evidence of Brownlee's borderline mental retardation, psychiatric disorders, . . . history of drug and alcohol abuse," *id.* at 1070, and his "'significantly impaired' [status] as a result of his various disorders at the time of the crime," *id.* at 1071. Because the State conceded the deficient performance prong on appeal, "the sole question under *Strickland* [wa]s whether Brownlee c[ould] prove prejudice as a result of his counsel's deficient performance." *Id.* at 1069. The Eleventh Circuit found that the sentencing hearing was "'fundamentally unfair'" and that the outcome was "'unreliable'" in light of the "powerful mitigation evidence" which the jury never heard. *Id.* at 1074 (quoting *Strickland*, 466 U.S. at 700). "[L]ingering questions about the strength of the case against Brownlee, including whether or not

he fired the fatal shot killing Dodd," contributed to the Eleventh Circuit's "concerns" over "confidence in the jury's balancing of the aggravating and mitigating circumstances, and [the] resulting recommendation of death[.]" *Brownlee*, 306 F.3d at 1073-74.

A Florida jury convicted the petitioner in *Porter* on two counts of premeditated murder. *Porter*, 14 F.3d at 555. Although the jury recommended a sentence of life imprisonment, "the trial judge overrode the jury's recommendation and sentenced Porter to death." *Id.* at 556. After a state court remand (unrelated to *Strickland* mitigation) and resentencing, in which counsel "presented evidence impeaching the previously unrebutted deposition testimony but . . . little or no other evidence in mitigation[,]" the petitioner received a second death sentence. *Id.* at 556. After an unsuccessful direct appeal, the petitioner moved to vacate pursuant to Florida Rule of Criminal Procedure 3.850. *Id.* The Florida circuit court denied the motion without an evidentiary hearing. *Id.* After faring no better with his § 2254 challenge in district court, the petitioner appealed. *Id.*

The Eleventh Circuit "remanded Porter's appeal for an evidentiary hearing" on several claims, including whether the petitioner had received ineffective mitigation assistance during the sentencing and resentencing. *Id.* at 556. Post-remand, the district court denied relief again. *Id.* In his second appeal, the petitioner

"challenge[d] the district court's holding that counsels' alleged failure to investigate, develop, and present mitigating evidence at sentencing and resentencing constituted an informed strategic decision." *Id.* The petitioner faulted the lawyers from the first sentencing for omitting evidence of his "difficult childhood, . . . abusive stepfather, illegitimacy, physical and sexual abuse, and juvenile incarceration[.]" *Id.* The petitioner claimed that the attorney from the second sentencing should have contacted his mother and "inquire[d] into information contained in the case file, including a psychiatric report indicating that petitioner's family life was 'less than ideal, physically, financially and emotionally.'" *Id.* at 556-57.

Before considering the merits of these mitigation claims, the Eleventh Circuit described a three-step approach:

> *First*, it must be determined whether a *reasonable investigation* should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a *tactical choice* by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. *Funchess v. Wainwright*, 772 F.2d 683, 689-90 (11th Cir. 1985). If the choice was not tactical and the performance was deficient, then it must be determined whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Middleton v. Dugger*, 849 F.2d 491, 493 (11th Cir. 1988).

*Porter*, 14 F.3d at 557 (emphasis in original). Based on this framework, the Eleventh Circuit rejected the petitioner's first sentencing claim because "[a]mple evidence

support[ed] the district court's implicit finding of fact that counsel omitted presentation of family background to shield the jury from Porter's prior extensive criminal activity." *Id.* at 558. Concerning counsel's strategy during the sentencing hearing before the judge, the Eleventh Circuit found "no evidence to contradict the conclusion that counsel continued to pursue the same informed tactical decision." *Id.*

The Eleventh Circuit upheld the district court's finding that trial counsel "made a reasonable tactical choice not to present family background evidence" with respect to the second sentencing as well. *Id.* at 560. Referring to counsel's testimony from the evidentiary hearing, the Eleventh Circuit noted that the petitioner identified only his mother as a character witness and later instructed his lawyer not to call her. *Id.* at 559. Trial counsel was uncertain whether the petitioner raised his juvenile record but remembered that the petitioner did not broach illegitimacy or sexual abuse. *Id.* at 559-560. Akin to the lawyers' decision in the first sentencing, the second sentencing counsel testified that "presenting family members who could have disclosed other criminal activity would not have been helpful." *Id.* at 560.

In *Baxter*, a Georgia jury sentenced the petitioner to death after finding that the circumstances of a strangulation murder supported the aggravating factors of killing a victim inhumanely for monetary gain. 45 F.3d at 1505-06. In reaching this

decision, the jury heard no new evidence from the state. 45 F.3d at 1505. "The defense called only one witness, a preacher who testified that . . . Baxter had a difficult upbringing, was physically abused, and was passed along '[f]rom one home, [an] orphanage or school of some sort.'" 45 F.3d at 1505. The preacher expressed opposition to the death penalty. 45 F.3d at 1505-06.

After losing on direct appeal, the petitioner sought but did not receive habeas relief in state or federal district court. 45 F.3d at 1506. The Eleventh Circuit rejected the petitioner's appeal with the exception of his *Strickland* claim based on trial counsel's failure to "reasonably investigate his long history of mental problems" or "present evidence of his psychiatric problems at sentencing." 45 F.3d at 1512.

Concerning the ineffective investigation claim, the Eleventh Circuit acknowledged that counsel "investigate[d] Baxter's background to some degree[,]" but found that "a reasonable investigation would have uncovered information concerning Baxter's psychiatric problems and commitment to a psychiatric institution." 45 F.3d at 1513. The Eleventh Circuit explained that counsel could have reasonably discovered this mitigating evidence if they had requested the petitioner's hospital, school, and county family services records or contacted his sister, neighbor, or social worker. *Id.* Additionally, given counsel's request that the petitioner receive

a pretrial psychiatric evaluation because of communication difficulties, "they were on notice of potential psychiatric problems in Baxter's background." *Id.*

Turning to the tactical inquiry, the Eleventh Circuit determined that the decision to forgo an investigation into the petitioner's mental health was not an "informed" one given the "misunderstanding" that the petitioner "spent much of his youth" incarcerated when, in fact, his history of mental problems was "readily available." 45 F.3d at 1514. Finally, because "the record was virtually devoid of mitigating evidence" and contained only "scarc[e] . . . aggravating circumstances," the Eleventh Circuit found sufficient prejudice to warrant a resentencing. 45 F.3d at 1515. The Eleventh Circuit acknowledged that "deficient performance in investigating psychiatric mitigating evidence will not always prejudice the defense[.]" *Id.* But the Eleventh Circuit described "the factors suggesting prejudice" in the petitioner's sentencing as "strong[,]" including "only one aggravating circumstance[,]" "several minutes" of mitigating testimony from the petitioner's preacher, and no "sexual abuse or kidnapping [offenses] common to other death penalty cases." *Id.*

Procedurally similar to *Baxter*, the Eleventh Circuit limited habeas relief to the petitioner's *Strickland* mitigation claim in *Harris*. 874 F.2d at 764. The petitioner's good character was the missing mitigation evidence in *Harris*, including that he "was

a devoted father, husband and brother" and "a decent, loving man whose life was important to [his family and minister]." 874 F.2d at 763. Counsel called no witnesses during the sentencing hearing and told the jury the petitioner's "'family ha[d] turned against him because he was accused of this act.'" 874 F.2d at 760. The petitioner offered witnesses during the state collateral hearing "who stated that they would have gladly testified at the sentencing hearing on Harris' behalf[,]" if contacted. *Id.*

The Eleventh Circuit recognized that "[a]n attorney is not obligated to present mitigation evidence if, after reasonable investigation, he or she determines that such evidence may do more harm than good." *Id.* at 763 (citing *Smith v. Dugger*, 840 F.2d 787, 795 (11th Cir. 1988)). But here the Eleventh Circuit found that the petitioner's counsel acted deficiently because "prior to the day of sentencing, neither lawyer had investigated Harris' family, scholastic, military and employment background, leading to their total—and admitted—ignorance about the type of mitigation evidence available to them." *Id.* Consequently, counsel's admitted lack of information precluded them "from making strategic decisions on whether to introduce testimony from Harris' friends and relatives." *Id.*

As for prejudice, the Eleventh Circuit acknowledged that presenting good character evidence to a jury was not without drawbacks because that mitigation

opened the door to developing the petitioner's "other felony convictions as well as his dishonorable discharge from the Army." 874 F.2d at 764. But finding a reasonable probability of a life sentence, the Eleventh Circuit emphasized that the jury had no individualized sense of the petitioner and that the murder began as a "weaponless burglary" that went "horribly awry" after the victim approached the petitioner with a knife "and apparently struck the first blow." 874 F.2d at 764. Consequently, knowledge of the petitioner's good character "may have had a greater impact on a jury deciding whether to impose the death penalty for this crime[.]" *Id.*

A Florida jury convicted and sentenced to death the petitioner in *Middleto*n "for the premeditated murder of . . . a woman who had taken him into her home, upon his parole from prison, because of his friendship with her son." 849 F.2d at 493. After holding a § 2254 evidentiary hearing, the district court ordered a resentencing based on *Strickland*, and the Eleventh Circuit affirmed. *Id.* The Eleventh Circuit observed that even though the petitioner had discussed mitigating mental information with his trial attorney, counsel "conducted almost no background investigation" and "failed to uncover an overwhelming amount of documentary mitigating evidence[.]"[27] *Id.* In light of the "readily discoverable" and

---

[27]     Specifically, research of the petitioner's background revealed:

a child psychiatric discharge summary . . . . [a] written diagnostic impression of . . . 'schizophrenic Reaction, Chronic Paranoid Type with Passive Features' . . . . [a]

"already existing" mitigating information, the Eleventh Circuit agreed with the district court that counsel provided ineffective investigative assistance. *Id.* at 494. The Eleventh Circuit found that counsel's testimony that "had he known of the records" he would have used them, expert testimony, and a record reflecting "no discernable [penalty-phase] strategy" supported the conclusion that "counsel had no valid tactical reasoning" for not investigating the petitioner's background. *Id.*

The Eleventh Circuit found that actual prejudice existed because trial counsel testified that introducing the background evidence to the jury would have made a difference in the sentencing outcome. 849 F.2d at 495. Additionally, the petitioner's "considerable" family, drug abuse, mental health, and scholastic histories included portions that "could well have met the standard for statutory mitigating factors." *Id.* Thus, "[d]espite the [existence of] statutory aggravating factors[,]" the Eleventh Circuit concluded that the record contained "ample support for the district court's holding" requiring a resentencing. *Id.*

---

recommend[ation] [of] . . . place[ment] in a residential treatment center for emotionally-disturbed children. . . . psychological testing . . . strongly indicat[ing] . . . a schizoid personality and . . . susceptib[ility] to schizophrenia. . . . [and] records from . . . various [sources] . . . . chronicl[ing] a childhood of brutal treatment and neglect, physical, sexual and drug abuse, a low I.Q. and mental illness.

849 F.2d at 493-94.

*Brownlee*, *Porter*, *Baxter*, *Harris*, and *Middleton* are helpful to understanding the components and core principles of a penalty-phase *Strickland* claim. But because the Eleventh Circuit evaluated ineffectiveness based on an evidentiary record in these cases pre-AEDPA, none addresses squarely whether the ACCA unreasonably applied Supreme Court precedent when it affirmed the dismissal of Mashburn's private investigator and mitigation specialist allegations. Instead, the Eleventh Circuit's analysis of adequate pleading post-AEDPA in *Powell* is more instructive. 602 F.3d at 1273 ("AEDPA limits our review to whether the state court's determination that [the petitioner] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was . . . an unreasonable application of Supreme Court precedent.").

For analysis purposes and in the absence of an evidentiary hearing, the Court accepts that Mashburn's assertions are sufficient to establish that counsel's deficient investigation, including a lack of tactical deliberation to the extent applicable, resulted in an incomplete mitigation case. Still, Mashburn's allegations are insufficient to establish *Strickland* prejudice. *See Powell*, 602 F.2d at 1274 ("[R]egardless of whether Powell has made allegations sufficient for a showing of deficient performance, he has not alleged facts sufficient to show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" (quoting *Strickland*, 466 U.S. at 694)); *cf.*
*Strickland*, 466 U.S. at 697  ("[A] court need not determine whether counsel's
performance was deficient before examining the prejudice suffered by the defendant
as a result of the alleged deficiencies.").

Mashburn's cited authorities do not suggest a different prejudicial
assessment. Mashburn pled guilty to committing a premeditated slaying and robbery
of his maternal grandmother and step-grandfather. Consistent with the above
summaries, *Brownlee*, *Baxter*, and *Middleton* involved petitioners with substantial
psychiatric histories as well as other potentially impactful background information
which the sentencing jury never heard. In contrast to these decisions in which
counsel omitted concrete mitigating evidence, Mashburn speculates that his
mitigation case would have been stronger if counsel had represented him better. But
without identifying what witness, record, diagnosis, or other mitigating evidence
counsel overlooked, Mashburn lacks adequate allegations to show a reasonable
probability that a different jury would rebalance the aggravating and mitigating
factors in favor of life. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)
("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to
what evidence could have been revealed by further investigation."). And AEDPA
requires even more from Mashburn—his better mitigation case must be one that

undermines confidence in the jury's death sentence to such a degree that the ACCA unreasonably concluded otherwise.

The circumstances of the double homicide that Mashburn committed are more egregious than the record in *Harris* which began as a weaponless burglary but escalated to murder after the victim appeared with a knife, or the record in *Brownlee* which contained "lingering questions about the strength of the case . . . including whether . . . [the petitioner] fired the fatal shot killing [the victim] . . . ." *Brownlee*, 306 F.3d at 1074. *Porter* does not demonstrate that the ACCA unreasonably applied *Strickland* as the Eleventh Circuit upheld the death sentence after finding that counsel made a tactical choice to not offer mitigation evidence that would open the door to the petitioner's criminal history. Therefore, *Brownlee*, *Porter*, *Baxter*, *Harris*, and *Middleton* do not persuade this Court that the ACCA applied *Strickland* unreasonably in rejecting Mashburn's incomplete investigation subclaims.

The Court turns now to Mashburn's remaining authorities which he references within Claim B's subclaims. Citing *Agan* in subclaim B.1, Mashburn contends that his trial counsel violated *Strickland* because they "allowed him to plead guilty to capital murder without conducting a reasonable investigation." (Doc. 24 at 19 ¶ 63.) *Agan* involved a petitioner who confessed to a grand jury about and received a death sentence for murdering an inmate. 12 F.3d at 1014, 1016. The

petitioner's "comments and behavior" before the grand jury and the trial court during sentencing undermined his "professed strategy of entering a guilty plea to avoid the death penalty[.]" 12 F.3d at 1017.

Asserting competency and *Strickland* claims, the petitioner sought federal habeas review of his Florida capital sentence. 12 F.3d at 1013. After a remand and evidentiary hearing, the district court granted the writ, and Florida appealed. *Id.* The Eleventh Circuit agreed with the district court's determination that relief was appropriate under *Strickland* and upheld the writ. 12 F.3d at 1019.

Specifically, given the following "shortcomings," the Eleventh Circuit affirmed the district court's conclusion that the petitioner's trial counsel's "representation fell below an objective standard of reasonableness" in satisfaction of *Strickland*'s first prong. *Id.* at 1018. Trial counsel spent just seven hours investigating the petitioner's capital case. 12 F.3d at 1015. Trial counsel "had little, if any, communication with" the petitioner's former attorney and did not obtain that lawyer's file which "contained [a] memorandum of [counsel's] conversation with [Officer] Ball regarding the possibility of Agan's innocence." 12 F.3d at 1014 & n.4. Trial counsel did not get the petitioner's medical or military file. 12 F.3d at 1015. Instead, trial counsel accepted the petitioner's word that he had never received psychiatric treatment and did not explore the petitioner's competency. *Id.* Without

reviewing those files, trial counsel was unaware of the petitioner's "lengthy history of mental health problems," including "eighty-one electric shock treatments" for psychosis; "various blackout incidents" while serving in the military; and use of "psychotropic medication at the time of the plea and sentencing." 12 F.3d at 1015. Trial counsel did not interview other inmates and "ended the inquiry into [the petitioner's] family history when [the petitioner] was unwilling to answer questions." *Id.* Trial counsel did not discover an internal prison investigative file that revealed an alleged extortion plan and identified two other prisoner suspects in the inmate's murder. *Id.* at 1015-16.

The Eleventh Circuit then assessed *Strickland*'s "'reasonable probability' of a different result" prong and observed that the standard demands "less than proof by a preponderance of the evidence." *Id.* at 1018. The Eleventh Circuit noted that the district court had considered "the entire evidentiary picture" and accepted the district court's factual findings as not clearly erroneous. *Id.* at 1019. The Eleventh Circuit concluded its analysis with a de novo confirmation that the petitioner had met both *Strickland* components. *Id.*

As the summary illustrates, the ineffective assistance in *Agan* is quantitatively and qualitatively stronger than Mashburn's allegations about his mismanaged mitigation case. The focus of Mashburn's allegations in subclaim B.1 is that an

investigatory delay and lack of attorney supervision harmed his mitigation case. But unlike the petitioner in *Agan*, whose counsel overlooked significant mental health treatment, competency to testify concerns, and other suspects, Mashburn has not described what missing pieces to his mitigation case his attorneys' alleged errors caused. Likewise, Mashburn has not alleged facts establishing a reasonable probability that absent the investigative delay and supervisory gaps, a sentencer would find that "the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.

Mashburn relies on *Thompson* in subclaims B.1 and B.4 and his reply for the principle that "[a] criminal defense attorney has a duty to investigate, but this duty is limited to reasonable investigation." 787 F.2d at 1450 (citing *Strickland*, 466 U.S. at 691); (Doc. 24 at 21 ¶ 72; *id.* at 31 ¶ 117; Doc. 40 at 14-15.) As the *Strickland* Court clarified, "in any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.

The petitioner in *Thompson* pled guilty to a torture-murder and received a death sentence under Florida law. 787 F.2d at 1449. On habeas review, the petitioner claimed (among several issues) that his counsel was ineffective during the sentencing hearing for not investigating his codefendant's background or developing the

petitioner's psychiatric health history and background. 787 F.2d at 1450, 1452. The Eleventh Circuit found that these investigative omissions satisfied *Strickland*'s deficient performance prong. *See id.* at 1450 ("In a capital case, where a defendant's life may well depend on the extent and nature of his participation, the background of a codefendant could be crucial."); *id.* at 1451 (finding that counsel's belief that his client had mental challenges made the failure to develop and present that mitigating factor "to the jury . . . inexplicable"); *id.* at 1452 ("We conclude that [counsel]'s failure to conduct any investigation of the petitioner's background fell outside the scope of reasonably professional assistance.").

Under the prejudice prong, the Eleventh Circuit considered the mitigating evidence that "a reasonably effective counsel" would have introduced and whether a jury would find it persuasive. *Id.* The Eleventh Circuit additionally assessed "the evidence actually presented to the sentencing jury, because a 'conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Id.* at 1452-53 (quoting *Strickland*, 466 U.S. at 696). The Eleventh Circuit concluded that the sentence "would have been the same" even if the jury had heard "evidence of a difficult youth, an unsavory

codefendant, and limited mental capacity" given the "atrocities" the petitioner admittedly committed.[28] *Id.* at 1453.

Additionally, the Eleventh Circuit found that this same evidence "would not be particularly persuasive even had the crime been less egregious." *Id.* The Eleventh Circuit noted that the jury heard about the codefendant's "connection with motorcycle gangs" and his influence over the petitioner. *Id.* While the jury did not know about the petitioner's mental condition or his childhood difficulties, the Eleventh Circuit found nothing to indicate that the petitioner "was suffering any specific disturbance at the time of the crime" and no witnesses to corroborate that the petitioner had a troubled youth. *Id.* at 1453-54. Thus, even though the petitioner identified specific gaps in his mitigation case because of an insufficient investigation, habeas relief was inappropriate pre-AEDPA.

Comparing Mashburn's Rule 32 allegations with the Eleventh Circuit's assessment of the sentencing circumstances in *Thompson* underscores the objective reasonableness of the ACCA's prejudicial analysis, rather than detracts from it. For the most part, Mashburn has not identified what concrete information his mitigation

---

[28]     The petitioner's atrocities in *Thompson* included "beating the victim with a chain, his fist, a chair leg, and a billy club" and raping her "with the chair leg and billy club." 787 F.2d at 1453.

case lacked due to counsel's investigatory delay and lack of supervision.[29] Consequently, Mashburn's generalized mitigation allegations are less compelling than the petitioner's reliance on "a difficult youth, an unsavory codefendant, and limited mental capacity" for resentencing relief in *Thompson*. And, akin to the petitioner's violence against the victim in *Thompson*, a unanimous jury found that Mashburn acted atrociously in stabbing and murdering his grandmother and step-grandfather. Thus, in light of *Thompson*, the ACCA did not unreasonably conclude that Mashburn's allegations were inadequate to undermine confidence in the jury's death sentence.

In subclaim B.4, Mashburn cites *Neal* and *Sanders* for the proposition that counsel's "failure to take an active part in the mitigation investigation" constitutes ineffective assistance. (Doc. 24 at 35-36 ¶ 135.) However, neither case assists him with his *Strickland* habeas burden. Mashburn correctly observes that the Fifth Circuit criticized trial counsel's minimal mitigation investigation in *Neal*. 286 F.3d at 237 (concluding that "a reasonable attorney would have investigated further and put on a more compelling defense during sentencing"). But the ACCA affirmed the dismissal of Mashburn's investigation allegations for lack of actionable *Strickland*

---

[29] As mentioned *supra*, the ACCA found that Mashburn's pediatric records were the sole exception in terms of documents that he specifically identified. *Mashburn II*, 148 So. 3d at 1138.

prejudice as opposed to performance. And Mashburn does not address *Neal*'s prejudice-prong holding that denied the petitioner resentencing relief consistent with AEDPA's deferential unreasonable application standard: "We thus hold that the state court's prejudice determination was not objectively unreasonable, viewed in the context of the extreme cruelty of the murder as an aggravating circumstance and that much of the mitigating evidence had already been presented to the jury, albeit in an abbreviated form." *Neal*, 286 F.3d at 247; *see also Cave v. Dep't of Corr.*, 638 F.3d 739, 744 (11th Cir. 2011) (explaining that habeas review is "not a substitute for ordinary error correction through appeal . . . . [but is] condition[ed] [upon a] show[ing] that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court] law . . . .") (internal quotation marks omitted).

Although the Ninth Circuit found sufficient evidence of prejudice to support habeas relief in *Sanders*, counsel's investigatory ineffectiveness occurred during the guilt phase and involved an omitted confession of a third party whom several state witnesses had identified as the "'real'" shooter. 21 F.3d at 1461. Consequently, counsel's "gross misconduct carried severe consequences for his client, who, though possibly innocent, was convicted of murder" and made "[t]he answer to the prejudice inquiry . . . evident." *Id.* Mashburn's ineffective investigatory assistance

allegations do not implicate an overlooked third party who confessed to murdering his grandmother and step-grandfather or otherwise approach gross attorney misconduct. Thus, *Sanders* is simply too different factually to establish that fairminded jurists would not disagree about the correctness of the ACCA's application of *Strickland* to Mashburn's incomplete investigation subclaims. *See Shinn*, 141 S. Ct. at 526 (explaining that an AEDPA petitioner must show "the sort of 'extreme malfunctio[n] in the state criminal justice syste[m]' that would permit federal court intervention." (quoting *Richter*, 562 U.S. at 102)).

### b.      Remaining Prescribed Medication Allegations

Finally, the Court considers Mashburn's exhausted penalty-phase allegations in subclaim B.5 that his counsel should have taken reasonable steps to make sure that he stopped taking prescribed medication before trial—80 milligrams of Elavil twice daily, 10 milligrams of Valium twice daily, and 80 milligrams of Inderal daily. (Doc. 24 at 36-39 ¶¶ 136-150.) Following the circuit court decision, the ACCA divided subclaim B.5 into five areas of alleged *Strickland* ineffectiveness: i) raising no objection when the trial court "asked [Mashburn] whether he wanted to be taken off of his medication" prior to diagnostic testing, *Mashburn II*, 148 So. 3d at 1142 (internal quotation marks omitted); ii) "failing to advocate that [Mashburn] be weaned off of his prescribed medication" to avoid symptoms that limited his ability

to assist in his defense, *id.* (internal quotation marks omitted); iii) preventing Dr. Shaffer from "performing a full and extensive psychological evaluation [of Mashburn] because of . . . [the] medication," *id.* at 1143 (internal quotation marks omitted0; iv) allowing Mashburn to continue taking ineffective medication that exacerbated his bipolar disorder, *id.*; and v) overlooking the negative behavioral side effects from a "discontinuous administration of Valium to . . . Mashburn[,]" *id.* (internal quotation marks omitted).

The circuit court dismissed these allegations as inadequate to show deficient performance and prejudice under *Strickland*. *Mashburn II*, 148 So. 3d at 1142-43; (*see also* Doc. 30-29 at 104 ¶ 29.) The ACCA quoted extensively from the circuit court's decision and approved the analysis. 148 So. 3d at 1142-43. Consistent with the circuit court's reasoning, the ACCA highlighted that Mashburn's failure to identify "what objection he believed counsel should have made that would have resulted in the trial court changing its ruling, postponing the trial, and allowing Mashburn to be weaned off his medication over time" was inadequate to show ineffectiveness. *Mashburn II*, 148 So. 3d at 1143. The ACCA noted that without identifying "what part of the evaluation Dr. Shaffer could not perform or what the results of that part of the evaluation would have been had Mashburn been taken off his medication[,]" his diagnostic testing allegations were insufficient to state a *Strickland* claim. *Id.* The

105

ACCA underscored that Mashburn's lack of specificity concerning whether "he suffered from mood instability, rebound irritability, . . . initial behavioral disinhibition" or other symptoms, rendered inadequate his claim that medicinal side effects hampered his defense and "'prevented [him] from expressing his remorse or contrition to the jury[.]'" *Id.* The ACCA concluded that dismissing these allegations summarily was appropriate because "Mashburn failed to plead sufficient facts to indicate that his counsel were ineffective for not adequately advocating that he be weaned off his medications before trial[.]" *Id.*

Respondents maintain that Mashburn cannot obtain habeas relief based on the allegations of subclaim B.5 because "the ACCA correctly applied the *Strickland* standard" in a manner that "was not unreasonable" under § 2254(d)(1). (Doc. 32 at 72-73 ¶ 33.) In reply, Mashburn does not challenge Respondents' AEDPA position, mention the prescribed medication allegations, or cite cases that undermine the ACCA's decision. (Doc. 40 at 13-15.) Consequently, through his silence, Mashburn has abandoned these *Strickland* allegations.

Mashburn has not shown an unreasonable application based on his petition either. With respect to subclaim B.5, Mashburn simply restates the medication allegations that he raised in state court and cites no cases. (Doc. 24 at 36-39 ¶¶ 136-150.) And none of the authorities that Mashburn included in the introduction to

Claim B involves alleged ineffectiveness attributable to a petitioner's medication regimen. (Doc. 24 at 18 ¶ 61.) Consequently, those decisions do not establish that the ACCA's resolution of these *Strickland* claims is subject to AEDPA's exceptions under (d)(1) or (d)(2). Therefore, the Court dismisses the remainder of Claim B as abandoned or unproven.

### D.    Alleged Trial Court *Boykin* Violation

Mashburn alleges in Claim I that the trial court committed constitutional error because it "did not advise [him] that he had the right to withdraw his guilty plea within thirty days of its entry." (Doc. 24 at 71; Doc. 40 at 13.) Mashburn contends also that the waiver of his right against self-incrimination and guilty pleas are void because the trial court did not "inform [him] of the rights he was waiving and [did not] ascertain[] that he understood all those rights[.]" (Doc. 40 at 13.) *Boykin*—considered already in conjunction with Respondents' waiver defense to all guilt-phase *Strickland* allegations in Claim A and Mashburn's procedurally defaulted guilty plea allegation in subclaim B.5—is the only authority that Mashburn references to support this claim. (Doc. 24 at 71-72; Doc. 40 at 13.)

Respondents assert that Mashburn cannot demonstrate a state court denial that meets one of § 2254's exceptions given the ACCA's rejection of these allegations on appeal. (Doc. 32 at 159-160 ¶ 52; *see generally Mashburn I*, 7 So. 3d at

462-63). Respondents answer also that Mashburn has not satisfied his burden under § 2254(e)(1)'s presumption of correct state court factual findings and § 2254(e)(2)'s evidentiary hearing requirements. (Doc. 32 at 160 ¶ 52.) In reply, Mashburn does not meet Respondents' answer head on but reasserts *Boykin* and characterizes the trial court's alleged guilty plea errors as actions which "compounded" his trial counsel's ineffective assistance during the guilt phase. (Doc. 40 at 13.)

The Court accepts, for analysis purposes, that Mashburn's mention of *Boykin* in reply is sufficient to trigger a more thorough habeas review than what a complete abandonment analysis requires. Still, Mashburn's response does not save this claim from a § 2254(d) dismissal.

The ACCA explained that Alabama Rule of Criminal Procedure 14.4(e) refuted Mashburn's claim that the trial court failed to advise him of the "*right*" to withdraw a guilty plea within 30 days. *Mashburn I*, 7 So. 3d at 463 (emphasis in original). Specifically, Rule 14.4(e) "allow[s] [the] withdrawal of a plea of guilty when necessary to correct a manifest injustice." Ala. R. Crim. P. 14.4(e). Additionally, the ACCA observed that permitting a defendant to withdraw a guilty plea "is a matter solely within the discretion of the trial court[.]" *Mashburn I*, 7 So. 3d at 463 (internal quotation marks omitted) (quoting *Alford v. State*, 651 So. 2d 1109, 1112 (Ala. Crim. App. 1994)). Thus, consistent with the ACCA's analysis, Alabama

does not afford a defendant with an unfettered right to withdraw a guilty plea. The Court's prior discussion of *Boykin*, *supra*, confirms that a defendant may challenge his guilty plea as unconstitutional if, during that process, the trial court fails to explain and make sure that a defendant understands the federal constitutional rights that he is forfeiting. But *Boykin* sheds no light on whether a trial court acts unconstitutionally if it fails to inform a defendant of a state law right to seek a guilty-plea withdrawal based on manifest injustice. (*See* Doc. 32 at 158 ¶ 52) (characterizing "the federal nature of this claim [a]s tenuous").

Additionally, the record substantiates that the trial court advised Mashburn of his *Boykin* rights during the plea hearing as this Court explained when analyzing his comparable ineffective assistance of trial counsel allegations involving his guilty pleas. (Doc. 30-6 at 103-110.) Consequently, Mashburn's contention that the waiver of his right against self-incrimination and guilty pleas are void because of the trial court's *Boykin* errors is baseless. Thus, Mashburn has not shown that the ACCA denied this claim in a manner that contradicts or unreasonably applies Supreme Court precedent.[30]

---

[30]     Likewise, in the absence of citing the state court record to challenge any factual determinations, Mashburn has abandoned or failed to prove a § 2254(d)(2) avenue to habeas relief based on Claim I's allegations.

E.     **Evidentiary Hearing Request**

As noted in the procedural history, the Court denied without prejudice Mashburn's motion for an evidentiary hearing under Rule 8 of the Rules Governing § 2254 Cases and stated that it would assess that request "during its substantive review of the petition." (Doc. 41 at 2.) Rule 8 provides that "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Rule 7 allows a habeas court to "direct the parties to expand the record by submitting additional materials relating to the petition."

Recently, the Eleventh Circuit clarified that "[i]f . . . the petitioner was diligent [in state court], 'a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1163 (11th Cir. 2020) (quoting *Schriro*, 550 U.S. at 474). A non-diligent petitioner "must satisfy the conditions of § 2254(e)(2)" to obtain an evidentiary hearing. *Id.* The court added that an abuse of discretion standard applies when a district court denies an evidentiary hearing on a procedurally-defaulted claim. *Id.*

With the exception of one procedurally-defaulted ineffectiveness allegation, the substance of Mashburn's Rule 32 and § 2254 assertions are the same. Akin to the ACCA's assessment of Mashburn's exhausted Rule 32 allegations, this Court finds that Mashburn's § 2254 allegations, even accepted as true, lack the requisite factual and legal specificity to substantiate an entitlement to habeas relief. And with respect to his unexhausted guilty-plea ineffective assistance of counsel claim, Mashburn does not pursue an exception to procedural default or contend in his motion or reply that an evidentiary hearing is necessary to overcome a procedural dismissal.

Instead, Mashburn vaguely maintains in his motion that he has sufficiently alleged constitutional violations based on ineffective assistance during "both the guilt . . . and penalty phase[s] of his capital murder trial (doc. 25 at 3-4 ¶ 14) and "seeks a hearing to allow him the opportunity to submit evidence in support of his allegations" (*id.* at 4 ¶ 16). Although in reply Mashburn reasserts his request for an evidentiary hearing and cites the Eleventh Circuit's *Martinez* and *Porter* decisions, *supra*, as support (doc. 40 at 15-18), he fails to detail which allegations would benefit from evidentiary development given AEDPA's deferential framework and his procedural default. Likewise, Mashburn does not explain why *Martinez* or *Porter* supports his evidentiary hearing request. Nor does either authority persuade this Court to hold an evidentiary hearing.

The Eleventh Circuit assumed in *Martinez* that the petitioner had "exercise[d] appropriate diligence" in state court and upheld the district court's denial of a habeas hearing because the record either "refuted" his habeas allegations or his allegations "d[id] not demonstrate" ineffective guilt-phase assistance. *Martinez*, 684 F. App'x at 926. This Court has found similar record refutations of allegations and pleading inadequacies in Mashburn's petition. Thus, *Martinez* bolsters the Court's decision to forgo a hearing.

Because *Porter* is a pre-AEDPA case, the Eleventh Circuit remanded for an evidentiary hearing without considering § 2254's deferential standards. Post-AEDPA, this Court must consider § 2254's deferential impact when a petitioner seeks a hearing. *See Martinez*, 648 F. App'x at 926 ("'Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.'" (quoting *Boyd*, 592 F.3d at 1304; quoting in turn *Schriro*, 550 U.S. at 474)).

Thus, consistent with the conclusion that Mashburn has not shown that the ACCA reached a decision that contradicted or unreasonably applied Supreme Court precedent and the alternative reasons supporting a dismissal of Mashburn's petition, the Court denies Mashburn's motion for an evidentiary hearing with prejudice. *See*

*Martinez*, 648 F. App'x at 926 ("[T]he district court need not conduct an evidentiary hearing if the record refutes the petitioner's factual allegations, otherwise prevents habeas relief, or conclusively demonstrates that the petitioner was not denied effective assistance of counsel." (citing *Schriro*, 550 U.S. at 474)).[31]

## IV.   CONCLUSION

For all of the reasons set forth herein, Mashburn's petition for writ of habeas corpus is due to be dismissed, or in the alternative denied.

Rule 11(a) of the Rules Governing § 2254 Cases requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. at 336 (internal quotation marks omitted). This Court

---

[31]   Because the Court finds that holding an evidentiary hearing would be futile based on the habeas record, determining "whether or not [Mashburn] pursued his . . . claim[s] diligently" in state court is unnecessary. *Ledford*, 975 F.3d at 1163-64.

finds Mashburn's claims do not satisfy either standard. Accordingly, a motion for a certificate of appealability is due to be denied.

A separate order in accordance with this opinion will be issued.

**DONE** and **ORDERED** on March 31, 2021.

L. Scott Coogler
United States District Judge

160704